**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAGUARO CHEVROLET, INC.,** | ) | |
| **an Arizona corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 06-714** |
| | ) | |
| **vs.** | ) | **Judge Emily C. Hewitt** |
| | ) | |
| **THE UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC
#00451100
Jack D. Klausner, AZ Bar #004139
Catherine Conner, AZ Bar #007368
3550 North Central Avenue, Suite 1500
Phoenix, Arizona 85012-2188
Attorneys for Plaintiff
jklausner@warnerangle.com
cconner@warnerangle.com
(602) 264-7101 (PHONE)
(602) 2234-0419 (FAX)

# TABLE OF CONTENTS

**Page**

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

MEMORANDUM IN RESPONSE TO MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. DISMISSAL IS NOT PROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. Privity of Contract Exists Between Saguaro and the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. Federal Regulations Demonstrated Intent to Contract . . . . . 4

2. There Was Consideration Here . . . . . . . . . . . . . . . . . . . . . . . 7

3. Saguaro Has Stated A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. This Court Has Remand Powers . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**FEDERAL CASES** **Page**

Navajo Nation v. United States,
46 Fed.Cl. 217 (2000) . . . . . . . . . . . . 4, 7, 8

Rawlings v. Apodaca,
151 Ariz. 149, 726 P.2d 565 (1986) . . . . . . . . . . . . 8

Sangre De Cristo Dev. Co. V. United States,
932 F.2d 891 (10th Cir. 1991), cert. denied 503 U.S. 1004 (1992) . . . . . . . . . . . . 6, 7

United States v. Algoma Lumber Co.,
305 U.S. 415 (1939) . . . . . . . . . . . . 6

Warr v. United States,
46 Fed.Cl. 343 (Fed.Cl. 2000) . . . . . . . . . . . . 7

Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,
201 Ariz. 474, 38 P.3d 12 (2002) . . . . . . . . . . . . 8

**FEDERAL STATUTES**

25 U.S.C. §415(a) . . . . . . . . . . . . 2
28 U.S.C. §1491(a)(1) . . . . . . . . . . . . 9
28 U.S.C. §1491(a)(2) . . . . . . . . . . . . 9, 10
78 Stat. 188 (Act of April 30, 1964) . . . . . . . . . . . . 1

**FEDERAL RULES**

RCFC 12(b)(1) . . . . . . . . . . . . 10
RCFC 12(b)(6) . . . . . . . . . . . . 10

## FEDERAL REGULATIONS

25 C.F.R. part 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
25 C.F.R. §131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
25 C.F.R. §131.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 9
25 C.F.R. §131.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
25 C.F.R. §162.619 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL REGISTER

66 F.R. 7068, 7111 January 22, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAGUARO CHEVROLET, INC., an Arizona corporation,** | ) | |
| **Plaintiff,** | ) | **No. 06-714** |
| **vs.** | ) | **Judge Emily C. Hewitt** |
| **THE UNITED STATES** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff, SAGUARO CHEVROLET, INC., ("Saguaro"), hereby files its response to the Motion to Dismiss ("Motion") filed by Defendant, THE UNITED STATES, ("United States"). As set forth in the accompanying memorandum of points and authorities, the Motion to Dismiss should be denied because this Court has subject matter jurisdiction over Saguaro's claims and relief can be granted by this Court on those claims.

**MEMORANDUM IN RESPONSE TO MOTION TO DISMISS**

**INTRODUCTION**

Saguaro brought this complaint in connection with a Lease between it, the Colorado River Indian Tribes ("CRIT"), and the United States. By its terms, the Lease was entered into under the provisions of the Act of April 30, 1964 (78 Stat. 188) as implemented by 25 C.F.R. §131. Pursuant to 25 C.F.R. §131.5, it was mandatory that the Lease include a

provision that all of Saguaro's obligations under the Lease be owed to the United States as well as to the CRIT. This statutory language was incorporated verbatim in the Lease. [See Lease, attached hereto as Exhibit "A", ¶33]. Accordingly, privity of contract exists between Saguaro and the United States, and this Court has subject matter jurisdiction over Saguaro's claim for money damages. Likewise, since this Court has subject matter jurisdiction over Saguaro's claim, it has the power to remand the Termination Decision back to the Superintendent with Orders that the Superintendent set aside the Termination Decision issued in violation of the Lease. Accordingly, the Motion to Dismiss should be denied.

## STATEMENT OF FACTS

As set forth in the Complaint ("CP") and admitted by the United States, the Lease at issue No. B-549-CR was for a term of 50 years and was entered into effective August 20, 1981. CP ¶2. The Lease was approved by the Secretary of the Interior pursuant to 25 U.S.C. §415(a). CP ¶2. The United States incorrectly asserts that the Lease was approved under 25 C.F.R. part 162. Motion at 2. Instead, pursuant to the terms of the Lease it was approved pursuant to 25 C.F.R. 131.5(a) (1981).

Pursuant to 25 C.F.R. §131.5, it was mandatory that the Lease include a provision that all of Saguaro's obligations under the Lease be owed to the United States as well as to the CRIT. This statutory language was incorporated verbatim in the Lease. [Exhibit A, ¶33]. In its Motion, the United States failed to disclose that in 2001 it terminated in its entirety the regulatory framework which imposed the requirement that a Tenant's obligations under

leases like the one at issue be owed to the United States as well as to the Landlord. 66 FR 7068, 7111, Jan. 22, 2001.

CRIT notified Saguaro of three alleged violations of the Lease, providing only ten (10) days notice to cure. CP ¶3, 4. The Lease required that Saguaro be given sixty (60) days notice to cure. CP ¶5. Despite a defective default notification and documentation from Saguaro demonstrating no defaults under the Lease, CRIT's acting Superintendent ("Superintendent") terminated the Lease pursuant to 25 C.F.R. §162.619. CP ¶7. The Termination Decision was then appealed and this action filed, all as admitted by the United States for purposes of the Motion to Dismiss.

## ARGUMENT

### I. STANDARD OF REVIEW.

Saguaro concurs that it has the burden to establish subject matter jurisdiction by a preponderance of the evidence, with all well-pleaded factual allegations to be deemed true and all reasonable inferences to be made in favor of Saguaro. Motion at 3-4. Saguaro further concurs that dismissal is proper only if it can prove no set of facts in support of its claim entitling it to relief. Motion at 4.

### II. DISMISSAL IS NOT PROPER.

Saguaro concurs that this Court has jurisdiction over contract claims against the United States. Motion at 5-6.

A. Privity of Contract Exists Between Saguaro and the United States.

Saguaro concurs that it must demonstrate privity of contract with the United States. Motion at 7-8. In order to demonstrate privity, there must be both an intention by the United States to assume a contractual obligation and consideration. Navajo Nation v. United States, 46 Fed.Cl. 217, 234 (2000).[1] Both requirements are present in this case.

1. Federal Regulations Demonstrated Intent to Contract.

In Navajo Nation, the lease contained general provisions which the Court found to be no more than the fulfillment of statutory duties of the United States. Those duties included a requirement that the United States approve the lease, and thereafter permitted the United States to participate in administering the lease by doing such things as making royalty payment adjustments, suspending mining operations, prohibiting assignment of the leasehold interests without its consent, terminating for violation of lease covenants or unlawful conduct, and inspecting the property and lessee's accounts. Id., at 234-235.

Here, as mandated by 25 C.F.R. 131.5, the Lease bestowed upon the United States all contractual benefits as Landlord under the Lease. [Exhibit A, ¶33]. Unlike the tenant in Navajo Nation, however, all of Saguaro's duties as Tenant were owed to both CRIT and the United States. [Exhibit A, ¶33]. Thus, the United States had all rights of Landlord under the

---

[1] Navajo Nation has a somewhat complicated procedural history. The original decision in the Court of Federal Claims was eventually appealed all the way to the United States Supreme Court which effectively "reinstat[ed] the judgement of the Court of Federal Claims." Navajo Nation v. United States, 68 Fed.Cl. 805, 807 (2005).

Lease, not just the traditional ministerial signature requirements and administrative obligations of the United States. Nowhere in the Lease was the United States limited to acting on behalf of the CRIT. Instead, the Lease authorized the United States to act as Landlord.

Further, through the almost fifty (50) references to the United States throughout the Lease, the United States was authorized to take all actions as Landlord under the Lease. Those provisions provided the United States with an independent right to require mediation if it could not reach any of the further agreements with Saguaro and the CRIT required by the terms of the Lease, and further provided that no resulting arbitration decision was binding upon the United States unless it agreed with the decision. [Exhibit A, ¶27]. And, the United States had an independent right to give Saguaro notice of default, terminate the Lease and exercise all Lease remedies against Saguaro for breach. [Exhibit A, ¶28].

Rental payments were initially to be made to the CRIT. However, the United States was given the authority under the Lease to direct Saguaro to make payments to the United States. [Exhibit A, ¶7]. Any change of use under the Lease required a renegotiation of the rental amount, to be approved by the United States. [Exhibit A, ¶7]. Construction plans and designs had to be submitted to CRIT and the United States for review and approval, and later changes required the approval of both CRIT and the United States. [Exhibit A, ¶9]. Excess water usage required approval by the United States. [Exhibit A, ¶13]. The United States had to be given ten (10) days notice by Saguaro of intent to commence construction.

[Exhibit A, ¶14]. Rental bond was to be posted by Saguaro with the United States--who was given power of attorney by Saguaro to execute upon such bond in the event of default. [Exhibit A, ¶15]. Sublease, assignment or transfer required the consent of the United States, not to be unreasonably withheld.[2] [Exhibit A, ¶17]. The United States was entitled to approve any encumbrance or replacement encumbrance by Saguaro, could require Saguaro to provide financial statements or analysis of approved encumbrances, and was a necessary party for notice in the event of any default under approved encumbrances. [Exhibit A, ¶20]. Tax payments were to be certified to the United States. [Exhibit A, ¶22]. The United States had the right to demand that Saguaro post a bond in connection with any lien or charge payable under the Lease. [Exhibit A, ¶23]. Copies of public liability, fire and damage insurance policies were to be provided to the United States. [Exhibit A, ¶¶24-25]. The United States had the right to require anti-pollution devices, receive notice of the presence of items protected by the Antiquities Act, receive copies of all notices and demands from Saguaro, and to inspect the leased premises. [Exhibit A, ¶¶34, 35, 37 & 40].

Accordingly, this Lease bestowed much more than the simple signatory or administrative involvement of the United States which previous courts have rejected as not demonstrating the requisite intention by the United States to assume a contractual obligation. See United States v. Algoma Lumber Co., 305 U.S. 415 (1939); Sangre De Cristo Dev. Co.

[2] Under this provision, the United States plainly assumes a duty of good faith and reasonableness in its operations under the Lease.

V. United States, 932 F.2d 891 (10th Cir. 1991), cert. denied 503 U.S. 1004 (1992). Furthermore, this Lease went far beyond merely permitting the United States to fulfill its statutory duties by executing a Lease Termination letter which has been held would not demonstrate the requisite intent to assume a contractual obligation. Warr v. United States, 46 Fed.Cl. 343 (2000). Instead, it evidenced the intent mandated by a federal regulation, that the United States assume a contractual obligation in order to receive the benefit of all obligations of Saguaro under the Lease. Navajo Nation, 46 Fed. Cl. at 235.

2. There was Consideration Here.

In Navajo Nation, the Court first reviewed the express language of the lease to see if there was an exchange of benefits between the Plaintiff Landlord and the Defendant United States. The Court found no consideration because "[b]y its terms, the lease suggests no benefit flowing to the United States." Id. at 235.

Because there were no stated contractual benefits flowing to the United States, the Navajo Nation Court even considered factors which the Plaintiff Landlord suggested had conferred the necessary benefit upon the Defendant United States to demonstrate consideration. Specifically, Plaintiff Landlord had argued that consideration existed by virtue of two factors: the reliance by public utilities on the coal mining operations resulting from the Navajo Nation lease, and an ownership interest of the United States in one of the public utilities purchasing coal resulting from the Navajo Nation lease. The Navajo Nation

Court rejected these factors suggesting instead that they simply furthered objectives within the executive responsibilities of the United States.

Here, however, as mandated by its own federal regulation, the Lease contains a specific contractual provision bestowing upon the United States all rights and benefits of Landlord, including the right to declare a default and exercise all remedies available under the Lease. Thus, the express terms of the Lease as required by the United States demonstrate consideration flowing to the United States. Id. at 234-235.

The existence of consideration is confirmed, because having required that Saguaro owe all obligations under the Lease to the United States, the United States then owed Saguaro, at a minimum, a duty of good faith and fair dealing under the Lease. All contracts as a matter of law include implied duties of good faith and fair dealing, and contract damages are available for breach. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz 474, 490-491, 38 P.3d 12, 28-29 (2002).

Breach of the covenant of good faith can occur without actually breaching an express covenant in a contract. Id. The essence of this duty is that neither party will act to impair the right of the other to receive the benefits expected to flow from their contractual relationship. Rawlings v. Apodaca, 151 Ariz. 149, 153-154, 726 P.2d 565, 569-570 (1986). For purposes of the Motion, this Court must treat the Lease as having been improperly terminated as alleged in the Complaint. The improper termination of this Lease by the United States impaired the right of Saguaro to receive the benefits expected to flow from the Lease. For

breach of the covenant of good faith and fair dealing, at a minimum, Saguaro is entitled to damages for loss of the benefits expected to flow from the Lease.

3. Saguaro has Stated a Claim Upon Which Relief can be Granted.

Saguaro has demonstrated privity of contract because there was a regulatory framework which demonstrated both an intention to enter into a contract and consideration. On that basis, pursuant to 28 U.S.C. §1491(a)(1), this Court has jurisdiction to render judgment for damages against the United States upon this claim arising from an express contract. The Motion must be denied.

B. This Court Has Remand Powers.

In its Complaint, Saguaro asked this Court to set aside the Termination Decision and order specific performance of the Lease. Complaint ¶21. Pursuant to 28 U.S.C. §1491(a)(2), this Court has the power in any case within its jurisdiction to "...remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."

Here, the required regulatory language of 25 C.F.R. 131.5 created privity in every lease effectuated thereunder. The United States terminated this regulatory framework in 2001. However, terminating the regulatory framework of 25 C.F.R. 131.5 at that time could not retroactively destroy the privity created under the terms of this Lease or excuse the contractual duties assumed by the United States as a result of the benefits/consideration flowing directly from Saguaro to the United States under this Lease. Termination of the

Lease was the only way to end the privity created by this Lease. However, in this case, the attempted termination utilized a defective notice of default and a disregard of the proof that Saguaro was not in default. The United States has admitted these allegations for purposes of this Motion. And, as demonstrated above, privity of contract exists here.

Since this Court has jurisdiction over this case it has the power to remand this matter back to the Superintendent with such direction as it may deem proper and just. 28 U.S.C. §1491(a)(2). Southwest asserts that this Court should remand this matter to the Superintendent with orders that the Termination Decision be withdrawn. Although such an order would effectively permit specific performance of the Lease, it would not transgress any jurisdictional limits of this Court. By withdrawing the Termination Decision, Saguaro will obtain the relief it seeks, which is to continue the Lease. Since this Court has the power to enter such orders to achieve the relief sought in the Complaint, the Motion to Dismiss must be denied.

## CONCLUSION

Saguaro has demonstrated the presence of intent to contract and consideration supporting the finding, for purposes of this motion, of the existence of privity of contract. The existence of a contract establishes a substantive right to money damages pursuant to either RCFC 12(b)(1) or RCFC 12(b)(6). Alternatively, having demonstrated the existence of privity of contract, this Court has the power to remand this matter to the Superintendent with orders to set aside the Termination Decision. The Motion to Dismiss must be denied.

Dated: February 23, 2007

Respectfully submitted,

WARNER ANGLE HALLAM
JACKSON & FORMANEK
#0045100

By: *___/s/ Catherine Conner___*
Jack D. Klausner - 004139
Catherine Conner - 007368
3550 N. Central Avenue, #1500
Phoenix, Arizona 85012
Attorneys for Plaintiffs
jklausner@warnerangle.com
cconner@warnerangle.com
(602) 264-7101 (PHONE)
(602) 2234-0419 (FAX)

171423.1