LESSEE: SAGUARO CHEVROLET, INC. LEASE NO. B-549-CR

LESSOR: COLORADO RIVER INDIAN TRIBES CONTRACT NO. ______

# INDEX


| ARTICLE NO. | | PAGE |
|---|---|---|
| 1. | DEFINITIONS | 1 |
| 2. | LEASED PREMISES | 1 |
| 3. | TERM | 2 |
| 4. | CONDITION OF LEASED PREMISES | 2 |
| 5. | PURPOSE | 2 |
| 6. | UNLAWFUL USES | 2 |
| 7. | RENTAL | 2 |
| 8. | IMPROVEMENTS | 4 |
| 9. | PLANS AND DESIGNS | 5 |
| 10. | COMPLETION OF DEVELOPMENT | 5 |
| 11. | CONSTRUCTION, MAINTENANCE, REPAIR, ALTERATION | 6 |
| 12. | COMMUNITY SERVICES | 6 |
| 13. | WATER USE AND FACILITIES | 6 |
| 14. | NON-RESPONSIBILITY NOTICES | 7 |
| 15. | RENTAL BOND | 7 |
| 16. | COMPANIES BONDING AND INSURING | 8 |
| 17. | SUBLEASE, ASSIGNMENT, TRANSFER | 8 |
| 18. | STATUS OF SUBLEASES | 9 |
| 19. | AGREEMENTS FOR UTILITY LINES AND STREETS | 9 |
| 20. | ENCUMBRANCE | 9 |
| 21. | NOTICE TO ENCUMBRANCER | 12 |
| 22. | LIENS, TAXES, ASSESSMENTS, UTILITY CHARGES | 12 |
| 23. | LESSOR'S PAYING CLAIMS | 13 |
| 24. | PUBLIC LIABILITY INSURANCE | 13 |
| 25. | FIRE AND DAMAGE INSURANCE | 14 |
| 26. | EMINENT DOMAIN | 15 |
| 27. | ARBITRATION | 17 |
| 28. | DEFAULT | 18 |
| 29. | ATTORNEY'S FEES | 19 |
| 30. | HOLDING OVER | 19 |
| 31. | NO PARTNERSHIP: OPERATION OF BUSINESS | 20 |
| 32. | TERMINATION OF FEDERAL TRUST | 20 |
| 33. | OBLIGATIONS OF LESSEE | 20 |

INDEX (CONTINUED)


| ARTICLE NO. | | PAGE |
|---|---|---|
| 34. | POLLUTION | 20 |
| 35. | ANTIQUITIES | 20 |
| 36. | MINERALS | 21 |
| 37. | PAYMENTS AND NOTICES | 21 |
| 38. | RESERVATION LAWS AND ORDINANCES | 21 |
| 39. | EMPLOYMENT | 21 |
| 40. | INSPECTION | 21 |
| 41. | DELIVERY OF PREMISES | 22 |
| 42. | LEASE BINDING | 22 |
| 43. | INTEREST OF MEMBER OF CONGRESS | 22 |
| 44. | VALIDITY | 22 |

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Colorado River Agency
Parker, Arizona

LEASE NO. B-549-CR

CONTRACT NO. ________________

BUSINESS LEASE

THIS CONTRACT is made and entered into this 20th day of August by and between the COLORADO RIVER INDIAN TRIBES hereinafter called the "Lessor", whose address is Route 1, Box 23-B, Parker, Arizona, 85344-9702 and SAGUARO CHEVROLET, INC. hereinafter called the "Lessee" whose address is P.O. Box 850, Parker, AZ, 85344 under the provisions of the Act of April 30, 1964, (78 Stat. 188) and as implemented by 25 CFR 131 which by reference herein are made a part hereof.

1. DEFINITIONS

A. "Secretary" means the Secretary of the Interior of the United States of America or his authorized representative, delegate or successor.

B. "Lessor" means the Colorado River Indian Tribes.

C. "Removable Personal Property" as used herein shall not include property which normally would be attached or affixed to the buildings, improvements, or land in such a manner that it would become a part of the realty, regardless of whether such property is in fact so placed in or on or affixed or attached to the buildings, improvements, or land.

2. LEASED PREMISES

For and in consideration of the rents, covenants and agreements hereinafter set out, the Lessor hereby leases to the Lessee the following described premises:

Lots numbered 22, 23, 24 and 25 within the Industrial Park of the Colorado River Indian Tribes, located in the NW¼, Section 7, Township 9 North, Range 19 West, G&SRB&M. The said lots consist of 788 feet frontage facing Arizona State Highway 95, with a depth of

COLORADO RIVER INDIAN TRIBES
LAND SERVICE ENTERPRISE.....$25.00

each lot running to the AT & SF Railroad Spur line Right-of-Way. The leased area is outlined on the attached sketch identified as Exhibit "A" attached to and made a part hereof.

All of the above land being located in the Colorado River Indian Reservation, Yuma County, State of Arizona, and containing an aggregate of 4.32 acres more or less and subject to any prior, valid, existing claim or rights-of-way.

3. TERM

The term of this lease shall be fifty (50) years, beginning on the date this lease is approved by the Secretary.

4. CONDITION OF LEASED PREMISES

Lessee has examined and knows the leased premises and no representations as to the condition thereof have been made by the Lessor or any agent of Lessor prior to or at the time of the execution of this lease and Lessee warrants that it has not relied on any warranty or representation made by or for Lessor, but solely upon Lessee's independent investigation.

5. PURPOSE

Lessee shall develop, use and operate the leased premises for the construction, maintenance and operation of a new and used automobile and truck sales and service facility, which includes financing and insuring, and includes but is not limited to sales, service and repair of all mechanical or electrical transportation vehicles, sales and service of all related vehicles, parts and accessories common to the transportation industry. The configuration and construction of the improvements shall be as set out in the plans and designs submitted in accordance with Article 9 (Plans and Designs) of this lease.

6. UNLAWFUL USES

The Lessee agrees that it will not use or cause to be used any part of the leased premises for any unlawful conduct or purpose.

7. RENTAL

The Lessee, in consideration of the foregoing, covenants, and agrees to pay in lawful money of the United States of America to the Secretary, for the

use and benefit of the Colorado River Indian Tribes the following rental:

A. On or before approval of this lease, the sum of One Hundred Fifty Dollars ($150.00) representing pro-rata payment of the guaranteed minimum annual rental from the date of approval of this lease through December 31, 1981.

B. On or before January 1, 1982, and on or before January 1 of each succeeding year during the term of this lease, Lessee shall pay guaranteed minimum annual rental in the amounts cited in the following rental schedule:

| YEARS | AMOUNT |
|---|---|
| 1 through 10 | Four Hundred Fifty Dollars ($450.00) per year. |
| 11 through 20 | Four Thousand Five Hundred Dollars ($4,500.00) per year. 1992 |
| 21 through 30 | Four Thousand Five Hundred Dollars ($4,500.00) per year plus an amount not to exceed the aggregate total of the Consumer Price Index increase during the proceeding ten year period. |
| 31 through 40 | The highest guaranteed minimum annual rental paid during the preceeding ten (10) year period, plus an amount not to exceed the aggregate total of the Consumer Price Index increase during the preceeding ten year period. |
| 41 through 50 | The highest guaranteed minimum annual rental paid during the preceeding ten (10) year period, plus an amount not to exceed the aggregate total of the consumer price index increase during the preceeding ten year period. |

C. As further consideration for this lease, Lessee agrees to

consumate all sales of new and used automobiles and trucks to enrolled members of the Colorado River Indian Tribes without payment of State of Arizona sales tax for so long a period of time as the law provides State of Arizona tax exemption to enrolled members of the Colorado River Indian Tribes, whether the Business under this lease is operated by Lessee, his sub-lessee or assigns.

If any part or parts of the leased premises are used for any purpose or purposes other than those set out above, the rentals for such uses shall be negotiated by the Lessor and the Lessee, subject to the approval of the Secretary, prior to the time such uses are commenced. In the event that negotiations between the Lessor and the Lessee are unsuccessful, the matter of the rentals shall be determined by a Board of Arbitration as provided by Article 27 of this lease.

Rental unpaid after the due date shall bear interest at twelve (12%) per cent per annum from the date it becomes due until paid, but this provision shall not be construed to relieve the Lessee from any default in making any rental payment at the time and in the manner herein specified. The rents called for hereunder shall be paid without prior notice or demand.

While the leased premises are in trust or restricted status, the Secretary may in his discretion suspend the direct rental payment provisions of this lease, in which event the rentals shall be paid to the Secretary.

8. IMPROVEMENTS

As a material part of the consideration for this lease, the Lessee covenants and agrees that within sixty (60) months after the beginning date of the term of this lease, Lessee shall have completed construction of permanent improvements on the leased premises at a cost of or having a reasonable value of Three Hundred Fifty Thousand Dollars ($350,000.00), representing construction of permanent improvements on the leased area comprising the sales and shop area, fencing, landscaping and screening of all storage areas, as cited in the plan of development to be submitted in accordance with Article 9 (Plans and Designs) of this lease.

All buildings and improvements, excluding removable personal property and trade fixtures, on the leased property shall remain on said property after the termination of this lease and shall thereupon become the property of the Lessor. The term "removable personal property" as used in this Article shall not include property which normally would be attached or affixed to the buildings, improvements or land in such way that it would become a part of the realty, regardless of whether such property is in fact so placed in or on or affixed or attached to the buildings, improvements or land in such a way as to legally retain the characteristics of personal property.

9. PLANS AND DESIGNS

Within one hundred eighty (180) days from the effective date of this lease, the Lessee shall submit to the Lessor and the Secretary for approval, a general plan and architect's design for the complete development of the entire leased premises, together with a phased program, by specific area, of the developments included as a part of the general plan. Before commencing any construction on the leased premises, the Lessee shall submit to the Lessor and the Secretary schematic drawings and general specifications for the improvements proposed. Lessor and the Secretary shall approve them if they conform to the general development plan, but shall not thereby assume any responsibility whatever for detailed design or structures in violation of any State, County, or City law or ordinance. Lessor and the Secretary shall either approve or state his reasons for disapproval of the general plans, architect's design, plats, surveys and specifications within sixty (60) days after their submission. No change will be made in the general plans, architect's design, plats, surveys, or specifications after approval without the consent of the Lessor and the Secretary.

10. COMPLETION OF DEVELOPMENT

The Lessee shall complete the full improvement and development of the leased premises in accordance with the general plan and architect's design, submitted in accordance with Article 10 above, within five (5) years from the beginning date of the term of this lease. If the Lessee fails to complete full development within such period, the guaranteed minimum rental payable under this lease shall increase ten per cent (10%) at the beginning

of the next fiscal year of this lease. For each full fiscal year thereafter that the Lessee fails to complete such full improvement and development, the guaranteed minimum annual rental payable under this lease shall be increased an additional two per cent (2%). If during the required period for completion a general or sympathetic strike or lockout occurs, war or rebellion ensues or some event unquestionably beyond the Lessee's power to control, the period of delay so caused shall be added to the period stated herein for the completion of such work.

11. CONSTRUCTION, MAINTENANCE, REPAIR, ALTERATION

All improvements placed on the leased premises shall be constructed in a good and workmanlike manner and in compliance with applicable laws and building codes. All parts of buildings exposed to perimeter properties shall present a pleasant appearance and all service areas shall be screened from public view. The Lessee or sublessee shall, at all times during the term of this lease and at the Lessee's sole cost and expense, maintain the premises and all improvements thereon in good order and repair, as required by law, all improvements on the leased premises and any alterations, additions, or appurtenances thereto, and shall otherwise comply with all public laws, ordinances, and regulations applicable to said premises. Lessee or sub-lessee shall indemnify and hold harmless the Lessor and the United States Government against liability for all claims arising from Lessee's failure to maintain said premises and the improvements thereon as hereinbefore provided, or from Lessee's or sublessee's non-observance of any law, ordinance, or regulation applicable thereto.

12. COMMUNITY SERVICES

The Lessee shall provide all the services to the leased premises including, but not limited to, police protection, fire protection, street maintenance, etc. The cost of these services shall be the sole responsibility of the Lessee.

13. WATER USE AND FACILIITIES

Water shall be used only for domestic, commercial, or recreational purposes; it shall not be used for industrial purposes except those industrial uses which do not require large volumes of water in the industrial process;

This determination shall be made by the Lessor and Secretary. The purposes more particularly for which water may be used shall be those set out in Article 5 (PURPOSE) of this lease, and any water used by Lessee for any other purpose or sold, or permitted to be sold or used off the leased premises shall be cause for immediate cancellation of this lease.

During the term hereof, Lessee shall pay all charges for water, sewage, gas, electricity, trash collection and other utility services supplied to and used on the leased land. All such charges shall be paid before delinquency, and Lessor and the United States of America shall be protected and held harmless by Lessee from all claims arising therefrom.

14. NON-RESPONSIBILITY NOTICES

Prior to the commencement of construction of each improvement on the leased property, or any repair or alteration thereto, or work or labor thereon, the Lessee shall give the Lessor or the Secretary ten (10) days notice in writing of intention to begin said activity, in order that non-responsibility notices may be posted. Lessor hereby authorizes the Lessee to post said notices on Lessor's behalf.

15. RENTAL BOND

Upon approval of this lease by the Secretary, the Lessee agrees to post a corporate surety bond in a penal sum of not less than one year's minimum rent, which bond shall be deposited with the Secretary and shall remain in force for the full term of the lease, at the discretion of the Secretary, and the Lessor. The amount of the bond shall be subject to adjustment during the term of the lease, to a sum equal to the most previously known year's minimum annual and rentals. Should waiver of rent bond be granted during the term of this lease, the Secretary or Lessor reserves the right to request that the Lessee furnish bond at a later date and Lessee hereby agrees to comply with said request. In lieu of furnishing a surety bond, Lessee may deposit with the Secretary cash or negotiable United States Treasury Bonds or other negotiable Treasury obligations, time deposit or a savings and loan association passbook, in the appropriate amount, together with power of attorney, appointing and empowering the Secretary, in the event of Lessee's default in any of the rent provisions of this lease, to pay over

any such cash or to withdraw the funds from any such savings and loan association account, or to dispose of any such bonds and pay over the proceeds derived therefrom, to apply on Lessor's damages or at Lessor's option as liquidated damages to or for the benefit of the Lessor, subject to Lessee's privilege of curing said default as hereinafter provided.

It is understood and agreed that bond required by this provision will guarantee payment of rent only and that corporate surety bond may be furnished annually or may be continued from year to year by a certificate of renewal, copy of which cerficate shall be furnished the Secretary and the Lessor by Lessee. If U.S. Treasury Bonds are provided, Lessee agrees to make up any deficiency in the value deposited that might occur due to a decrease in the value of the bonds. Interest on said bonds shall be paid to the Lessee.

16. COMPANIES BONDING AND INSURING

All corporate surety bonds provided by Lessee in compliance with this lease shall be furnished by companies holding certificates of authority from the Secretary of the Treasury as acceptable sureties on Federal bonds. Insurance policies shall be furnished by such responsible companies as are rated A-plus, AAA or better in the current edition of Best's Insurance Guide.

17. SUBLEASE, ASSIGNMENT, TRANSFER

The Lessee shall not sublease, assign, or transfer this lease or any right to or interest in this lease or any of the improvements on the leased premises, without the written approval of the Lessor, the Secretary and Sureties and no such sublease, assignment or transfer shall be valid or binding without such approval, and then only upon the condition that the Sublessee, Assignee or other successor in interest, excepting an approved encumbrancer, shall agree in writing to be bound by each and all of the covenants and conditions of this Lease. Should the Lessee attempt to make any such sublease, assignment or transfer, except as aforesaid, such action shall be deemed a breach of this lease, excepting that an encumbrancer, as herein set forth, may enforce his rights in the manner hereinafter provided. Such approval of one sublease, assignment or transfer shall not validate a subsequent sublease, assignment or transfer, and the restrictions of this Article shall apply to each successive sublease, assignment or transfer hereunder and shall be severally

binding upon each and every sublessee, assignee, transferee and other successor in interest of the Lessee, excepting an encumbrancer.

The Lessor and the Secretary shall not unreasonably withhold approval of any sublease, assignment or transfer and shall either approve or state his reasons for disapproval within sixty (60) days after the sublease, assignment or transfer is submitted to him for approval. Contracting of management of parts and body shop operations conducted on the leased premises shall not be considered subleasing as that term is understood and used in this lease.

18. STATUS OF SUBLEASES

Termination of this lease, by cancellation or otherwise, shall not serve to cancel approved subleases or subtenancies, but shall operate as an assignment to Lessor of any and all such subleases or subtenancies.

19. AGREEMENTS FOR UTILITY SERVICES

Lessee hereby agrees that at such time as the community sewer lines, water lines and other utility services including but not limited to gas, electricity, telephone and television become available to the leased premises, it will enter into agreements with the utility authorities furnishing these services, and will tie into for service from the aforementioned utility lines.

20. ENCUMBRANCE

Lessor agrees in accordance with the Tribal Council action dated August 11, 1981 that the Lessee may encumber his leasehold interest for the purpose of borrowing capital for the development and improvement of the lease premises provided the encumbrance is confined to the leasehold interest of Lessee or subleasehold interest of a sublessee and shall not jeopardize in any way Lessor's interest in the land. Lessee agrees to furnish as requested any financial statements or analysis pertinent to the encumbrance that the Lessor or Secretary may deem necessary to justify the amount, purpose, and terms of said encumbrance.

"Approved encumbrance" herein shall mean an encumbrance approved by the Lessor, Secretary, and sureties, if any, in the manner provided herein. "Encumbrancer" herein shall mean the owner and holder of an approved encumbrance.

A. An encumbrancer of any sublessee in the event of default by sublessee of the terms of an approved encumbrance, may exercise any rights provided

in such encumbrance, provided that before any sale of the subleasehold whether under the power of sale or foreclosure, the encumbrancer shall give to the Lessor, Secretary and Lessee hereunder notice of the same character and duration as is required to be given to sublessee by such encumbrance or by law.

If notice of such sale shall be given and the defaults or any of them upon which such notice of sale is based shall then continue, Lessee shall have the following rights which may be exercised at any time prior to the completion of sale proceedings: (a) to pay to the encumbrancer the full unpaid principal amount of the approved encumbrance, plus unpaid interest accrued to the date of such payment, plus foreclosure or sale costs incurred to the date of such payment; or (b) to execute in favor of the encumbrancer a promissory note and a new encumbrance for the full unpaid principal amount of the approved encumbrance, plus unpaid interest accrued to the date of such execution, plus sale expenses incurred to the date of such execution, upon the same terms and conditions as originally provided by the approved encumbrance, and delivering to the encumbrancer a policy of title insurance in the amount of such promissory note issued by a reputable title insurance company, and insuring that the new encumbrance is a first lien upon the subleasehold described in said sublease subject only to current taxes and to conditions, restrictions and reservations of record at the time of the recording of the approved encumbrance. If Lessee exercises either of the above rights, all the rights, title and interest of sublessee in the sublease shall automatically terminate on the date the right is exercised and Lessee shall on the same date acquire the subleasehold; however, the acquisition of the subleasehold by Lessee under these circumstances shall not serve to extinguish the sublease by merger with the lease or otherwise.

In the event Lessee does not avail himself of the above rights and any sale under the approved encumbrance occurs, whether by power of sale or foreclosure, the purchaser at such sale shall succeed to all of the rights, title and interest of sublessee in the subleasehold covered by said approved encumbrance. It is further agreed that if the purchaser at such sale is the encumbrancer, the encumbrancer may sell and assign the subleasehold without any further consent, provided that the assignee shall agree in writing to be bound by

all the terms and conditions of the sublease. If the encumbrancer is the purchaser, it shall be required to perform the sublease only so long as it retains title thereto. If a sale under the approved encumbrance occurs and the purchaser is a party other than the encumbrancer, said purchaser, as successor in interest to sublessee shall be bound by all the terms and conditions of the sublease.

B. In the event of default by the Lessee of the terms of an approved encumbrance, the encumbrancer may exercise any rights provided in such approved encumbrance, provided that before any sale of the leasehold, whether under power of sale or foreclosure, the encumbrancer shall give to the Lessor and the Secretary notice of the same character and duration as is required to be given to Lessee by such encumbrance or by law.

If such notice of sale be given, and the defaults or any of them upon which such notice of sale is based shall then continue, Lessee shall have the following rights which may be exercised at any time prior to completion of sale proceedings: (a) to pay to the encumbrancer the full unpaid principal amount of the approved encumbrance, plus unpaid interest accrued to the date of such payments, plus sale costs incurred to the date of such payment; or (b) to execute in favor of the encumbrancer a promissory note and a new encumbrance, which new encumbrance must be approved by the Secretary, for the full unpaid principal amount of the approved encumbrance, plus unpaid interest accrued to the date of such execution, plus sale expenses incurred to the date of such execution, upon the same terms and conditions as originally provided by the approved encumbrance, and delivering to the encumbrancer a policy of title insurance in the face amount of such promissory note, issued by a reputable title insurance company, and insuring that the new encumbrance is a first lien upon the property described in this lease subject only to current taxes and to conditions, restrictions and reservations of record at the time of recording of the new encumbrance; or (c) to exercise any other rights inuring prior to completion of sale or proceedings. If Lessor exercises any of the above rights, this lease shall automatically terminate on the date the rights are exercised and shall be of no further force and effect; provided, however, that such termination shall not relieve Lessee from any obligations or liability which had accrued prior to the date of termination.

In the event Lessor does not avail himself of the rights above set forth in this Article and any sale under the approved encumbrance occurs, whether by power of sale or foreclosure, the purchaser at such sale shall succeed to all of the rights, title and interest of Lessee in the leasehold estate covered by said approved encumbrance. It is further agreed that if the purchaser at such sale is the encumbrancer, the encumbrancer may sell and assign the leasehold interest without any further consent, provided that the assignee shall agree in writing to be bound by all the terms and conditions of this lease. If the encumbrancer is the purchaser, it shall be required to perform this lease only so long as it retains title thereto. If a sale under the approved encumbrance occurs and the purchaser is a party other than the encumbrancer, said purchaser, as successor in interest to Lessee, shall be bound by all the terms and conditions of this lease.

21. NOTICE TO ENCUMBRANCER

At least forty-five (45) days prior to any termination of the lease, Lessor shall give to the holder of an approved mortgage or encumbrance, written notice of Lessor's intention to so terminate. If such proposed termination be for any default of Lessee under the lease, the mortgagee or encumbrancer shall be entitled to remedy such default at any time before such termination occurs, and thereby prevent termination for such default, or if such default cannot be remedied within forty-five (45) days, to commence the remedy thereof within thirty (30) days and deligently prosecute the same thereafter, during which time the lease shall not be terminated for such default. Any such notice shall be mailed to the encumbrancer at the address on file with the Lessor, and the Secretary.

In the event Lessor terminates this lease without giving the aforementioned forty-five (45) days notice to the holder of an approved mortgage or encumbrance, then, at any time within sixty (60) days after Lessor notifies such holder of such termination, such holder shall have the right to redeem Lessee's interest by curing Lessee's delinquency or default and assuming all responsibility of Lessee under the lease.

22. LIENS, TAXES, ASSESSMENTS, UTILITY CHARGES

Lessee shall not permit to be enforced against the leased premises or any part thereof, any liens arising from any work performed, materials furnished,

or obligations incurred by Lessee, but Lessee shall discharge all such liens before any action is brought to enforce same; further, Lessee shall pay before delinquent, all taxes, assessments, licenses, fees, and other like charges levied during the term of this lease upon or against the leased land and all interests therein and property thereon for which either the Lessee or Lessor may become liable. Upon written application, the Lessee shall furnish the Lessor and the Secretary written evidence duly certified that any and all taxes required to be paid by Lessee have been paid, satisfied, or otherwise discharged. Lessee shall have the right to contest any claim, asserted tax, or assessment against the property by posting bond to prevent enforcement of any lien resulting therefrom, and Lessee agrees to protect and hold harmless the Lessor, the Secretary, and the leased premises and all interest therein and improvements thereon from any and all claims, taxes, assessments, and like charges and from any lien therefore, or sale or other proceedings to enforce payment thereof, and all costs in connection therewith. Lessor shall execute and file any appropriate documents with reference to real estate tax exemption of the land when requested by Lessee. In addition to the rents, taxes and other charges herein described, Lessee shall pay all charges for water, sewage, gas, electricity, telephone, and other utility services supplied to said premises.

23. LESSOR'S PAYING CLAIMS

Lessor shall have the option to pay any lien or charge payable by Lessee under this lease, or settle any action therefor, if the Lessee after written notice from Lessor or Secretary fails to pay or to post bond against enforcement. All costs and other expenses incurred by Lessor in so doing, shall be paid to Lessor by Lessee upon demand, with interest at the rate of eight per cent (8%) per annum from date of payment until repaid. Default in such repayment shall constitute a breach of the covenants of this lease.

24. PUBLIC LIABILITY INSURANCE

At all times during the term of this lease, Lessee shall carry a public liability insurance policy in the amount of not less than $800,000.00/$1,250,000.00 for personal injury and $150,000.00 for property damage, said policy to be written jointly to protect Lessee, Lessor and the United States of America. Copy of said policy shall be furnished the Lessor and the Secretary. Neither the Lessor nor

the United States Government, nor their officers, agents, and employees shall be liable for any loss, damage, death or injury of any kind whatsoever to the person or property of the Lessee or sublessees or of any other person whomsoever, caused by any use of the leased premises, or by any defect in any structure erected thereon, or arising from any accident, fire, or from any other casualty on said premises or from any other cause whatsoever; and Lessee, as a material part of the consideration for this lease, hereby waives on Lessee's behalf all claims against Lessor and the United States Government and agrees to hold Lessor and the United States Government free and harmless from liability for all claims for any loss, damage, injury or death arising from the use of the premises by Lessee, together with all costs and expenses in connection therewith.

25. FIRE AND DAMAGE INSURANCE

Lessee or sublessee shall, from the date of approval of this lease carry fire insurance with extended coverage endorsements, and vandalism, jointly in the names of the Lessee or sublessee, Lessor and the United States of America, covering not less than eighty per cent (80%) of the insurable value of all insurable improvements on the leased premises. Said policy or policies or copies thereof shall be deposited with the Lessor and the Secretary, and Lessee or sublessee shall pay all premiums and other charges payable in respect to such insurance, and shall deposit with the Lessor and the Secretary the receipt for each premium or other charge as paid, or satisfactory evidence thereof. In the event of damage to any improvement on the leased premises, the Lesssee or sublessee shall rebuild, repair or otherwise reinstate the damaged improvement or building or in a good and substantial manner accordng to the plan and elevation of the improvement or building so destroyed or damaged or such modified plan as shall be previously approved in writing by the Lessor and the Secretary. Such reconstruction shall commence within one (1) year after the damage occurs and shall be pursued diligently. Insurance proceeds shall be deposited in escrow with an institution approved by the Secretary and the Lessor. The Lessee or sublessee shall also deposit in said escrow all additional funds required to reconstruct the damaged improvement. Escrow instructions shall include provisions that all funds so deposited shall be used to reconstruct the damaged improvement, and funds shall be disbursed during the progress of reconstruction

on proper architect's engineer's, or contractor's certificates. All money in escrow after reconstruction has been completed shall be paid to Lessor.

In the event of damage to the extent of seventy-five per cent (75%) or more of the total value of all improvements on the leased premises during the last five (5) years of the term of this lease, the Lessee shall have the option whether or not to reconstruct said improvements. Should Lessee elect not to reconstruct, the leased premises shall be cleared at Lessee's expense. In that event, all insurance proceeds shall be paid to the Lessor.

Any encumbrancer shall be named as a beneficiary under the insurance mentioned in the within paragraph, and in the event of loss or damage to the buildings on the leased property while an approved encumbrance remains unpaid, the amount of such loss or damage (but not exceeding the amount of the approved encumbrance) shall be paid to the encumbrancer. If such amount paid to the encumbrancer is sufficient to repair the loss or damage with respect to which it was paid, or if Lessor or Lessee shall within three (3) months after such payment by the insurer to the encumbrancer deposit with the encumbrancer enough money to completely repair the loss or damage, when added to the amount paid by the insurer to the encumbrancer, the encumbrancer shall, upon written order of Lessor and Lessee pay such monies for such repair, and it shall not be deemed a payment or credit on the encumbrance; but otherwise, at the expiration of such three (3) months said sum so paid by the insurer to the encumbrancer shall be applied and credited upon the approved encumbrance.

26. EMINENT DOMAIN

(a) Lessees's Option

The term "total taking" as used in this Article means the taking of the entire leased land in fee under the power of eminent domain. The term "partial taking" means any other taking in fee under the power of eminent domain, except that if eighty per cent (80%) or more by area but not all of the leased land is so taken, or if as a result of the taking of a part but not all of the leased land, access from the remaining portion of the leased land to the Colorado River or to the highway is substantially impaired, or as a result of said taking, the remining portion of the leased land is rendered substantially unfit for the

purposes contemplated in this lease, the Lessee shall have the option within sixty (60) days of the date of such taking by notice in writing to the Lessor and Secretary and with the consent of all holders of approved encumbrances to have such taking deemed a "total taking".

(b) Total Taking.

In case of a total taking, the leasehold estate of Lessee and his liability for future installments of rental (except accrued percentage rental, if any) shall cease and terminate as of the date the actual physical possession of the premises or portions thereof shall be so taken.

(c) Partial Taking.

In the case of a partial taking, this lease shall terminate as to the portion taken upon the date on which actual possession of said portion is taken, but this lease shall continue in full force and effect as to the remainder of the leased land; and each ensuing installment of ground rental only shall be abated in the ratio that the ground area of the leased land taken bears to the total area of said land prior to the taking.

(d) Refund of Advance Rentals.

There shall be no refund of ground rent paid in advance, because of total or partial taking of the leased premises.

(e) Allocation of Award.

All compensation and damages awarded for the taking of the leased land or any portion thereof shall, except as otherwise herein provided, belong to and be the sole property of the Lessor, and Lessee shall not have any claim or be entitled to any award for diminution in value of its leasehold hereunder or for the value of any unexpired term of this lease; provided, however, that Lessee shall be entitled to a portion of the award equal to: (1) in case of partial taking, the reasonable cost of alterations, modifications, and repairs necessary to place the remaining portion of the leased land in suitable condition for continuance of Lessee's tenancy; (2) in case of either total or partial taking, the enhancement in value of the parcel taken attributable to the Lessee's improvements diminished by the amount of said enhancement

in value multiplied by a fraction of which the total years in the existing term (either prime or renewal), is denominator and the number of full years elapsed since the beginning of such term is numerator. And provided further, that in case of either total or partial taking, each holder of an approved encumbrance on the leasehold on the portion of the premises taken, shall be entitled before the Lessee to so much of the Lessee's award as is equal to the non-delinquent unpaid balance of the obligation secured by such mortgage and accrued non-delinquent interest as of the date of taking, but not to any portion of the award for principal or interest delinquent on the date of such taking.

(f) Taking for a Term.

In case the leased premises or any portion of them are condemned for a term of years, then Lessee shall remain bound by all rental provisions of this lease and shall be entitled to the entire award except such part, if any, as is allowable to a period beyond the term of this lease and such part, if any, as represents or is equal to a decrease in percentage rentals which would be paid by Lessee except for such taking during the term of years condemned.

(g) Voluntary Conveyance.

A voluntary conveyance by Lessor to a public utility, agency or authority under threat of a taking under the power of eminent domain in lieu of formal proceedings shall be deemed a taking within the meaning of this Article.

27. ARBITRATION

Whenever during the term of this lease the Lessee, the Lessor, and the Secretary are unable to reach an agreement as required by this lease, and it becomes necessary to submit a matter to arbitration for settlement, an Arbitration Board shall be established. Said Arbitration Board shall consist of three persons, one member to be selected by the Lessee, one member to be selected by the Lessor, and the third to be selected by the other two members. The decision of the majority of the members of the Arbitration Board so constituted shall be binding on the parties, subject to the approval of the Secretary. The costs of such Arbitration Board shall be shared equally by the Lessee and the Lessor. It

is further understood and agreed that the Secretary may be expected to accept any reasonable decisions reached by said Arbitration Board, but he cannot be legally bound by any decisions which might be in conflict with the interests of the Indians or the United States Government.

28. DEFAULT

Time is declared to be of the essence of this lease. Should Lessee default in any payment of monies or fail to post bond, as required by the terms of this lease, and if such default shall continue uncured for the period of thirty (30) days after written notice thereof by the Lessor or the Secretary to Lessee, during which 30-day period Lessee shall have the privilege of curing such default, or should Lessee breach any other covenant of this lease, and if such breach shall continue uncured for a period of sixty (60) days after written notice thereof by the Lessor or the Secretary to Lessee, during which 60-day period Lessee shall have the privilege of curing such breach, then Lessor and the Secretary may either:

A. Collect by suit or otherwise, all monies as they become due hereunder, or enforce, by suit or otherwise, Lessee's compliance with any other provisions of this lease, or

B. Re-enter the premises and remove all persons and property therefrom excluding the property belonging to authorized sublessees, and either

(1) Re-let the premises without terminating this lease, as the agent and for the account of Lessee, but without prejudice to the right to terminate the lease thereafter, and without invalidating any right of Lessor and the Secretary or any obligation of Lessee hereunder. Terms and conditions of such re-letting shall be at the discretion of Lessor and the Secretary, who shall have the right to alter and repair the premises as they deem advisable, and to re-let with or without any equipment or fixtures situated thereon. Rents from any such re-letting shall be applied first to the expense of re-letting, collecting, altering, and repairing, includ-

ing attorney's fees and any real estate commission actually paid, insurance, taxes and assessments and thereafter toward the payment to liquidate the total due, Lessee shall pay to Lessor monthly when due, any deficiency, and Lessor and the Secretary may sue thereafter as each monthly deficiency shall arise.

(2) Terminate this lease at any time and even though Lessor and the Secretary have exercised rights as outlined in (1) above. Exercise of this remedy shall exclude recourse to any other remedy.

C. Take any other action deemed necessary to protect any interest of Lessor. No waiver of a breach of any of the covenants of this lease shall be construed to be a waiver of any succeeding breach of the same or any other covenant.

Any action taken or suffered by Lessee as a debtor under any insolvency or bankruptcy act shall constitute a breach of this lease. In such event, the Lessor and the Secretary shall have the options set forth in Subarticles (1) and (2) herein, and furthermore, the Lessor is hereby declared to be a first preferred creditor, except as provided in Article 21.

29. ATTORNEY'S FEES

If action be brought by either party in unlawful detainer for rent or any other sums of money due under this lease, or to enforce performance of any of the covenants and conditions of this lease, the losing party shall pay reasonable attorney's fees of the prevailing party, to be fixed by the Court as a part of the costs in any such action.

30. HOLDING OVER

Holding over by the Lessee after the termination of this lease shall not constitute a renewal or extension thereof or give the Lessee any rights hereunder or in or to the leased premises.

Lessee agrees to remove all property removable under the terms of this lease prior to the termination of this lease or pay a daily rental computed at the rate of double the daily rental charged during the year immediately preceding the termination of the lease, from the day following the termination date of the lease until said property is removed.

31. NO PARTNERSHIP; OPERATION OF BUSINESS

Regardless of the fact that terms of rental are in part on a percentage basis, Lessee and Lessor are not in partnership.

All business on the leased premises shall be conducted during the regular and customary hours of such businesses and on all business days in good faith, so that Lessor will at all times receive the maximum income under the percentage rental provisions of this lease.

32. TERMINATION OF FEDERAL TRUST

Nothing contained in this lease shall operate to delay or prevent a termination of Federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of this lease; however, such termination shall not serve to abrogate the lease. The owners of the land and the Lessee and their surety or sureties shall be notified of any such change in the status of the land.

33. OBLIGATIONS OF LESSEE

While the leased premises are in trust or restricted status, all of the Lessee's obligations under this lease, and the obligations of their sureties, are to the United States as well as to the Lessor.

34. POLLUTION

The Lessee shall, during the construction of permanent improvements on the leased premises, install wherever necessary as required by Lessor and Secretary, anti-pollution devices which will reduce the harmful effects to the surrounding areas, from the creation of pollution, including but not limited to, air, water, soil, and aesthetic view pollution.

The anti-pollution devices installed as a result of this clause are required to conform to the laws and ordinances of the Colorado River Indian Tribes and United States of America governing the installation and quality of said devices. Failure on the part of the lessee to abide with the terms of this clause shall subject this lease to cancellation according to the provisions contained in 25 CFR 131.14 - Default.

35. ANTIQUITIES

In accordance with the Laws of Antiquity Act of 1906, it is understood and agreed by the parties hereto that any areas within the exterior

boundaries of the lease premises containing graves, ruins, or other antiquities, shall be undisturbed and plainly marked by Lessee and reported immediately to the Lessor and the Secretary for appropriate disposition and action.

This shall likewise apply to any discoveries made in excavations during the development of the leased premises. Said areas designated as antiquities shall be automatically withdrawn from the leased premises.

36. MINERALS

This lease confers no vested interest, right, or title to any minerals including sand and gravel and building stone materials within the leased premises. However, moving dirt, sand and rock for the purpose of developing and improving the premises as required by this lease shall not be construed as mining.

37. PAYMENTS AND NOTICES

All notices, payments and demands, shall be sent to the parties hereto at the addresses herein recited or to such addresses as the parties may hereafter designate in writing. Notices and demands shall be sent by registered mail. Service of any notice or demand shall be deemed complete ten (10) days after mailing or the date actually received, whichever occurs first. Copies of all notices and demands shall be sent to the Secretary in care of the office of the Bureau of Indian Affairs hereinabove recited.

38. RESERVATION LAWS AND ORDINANCES

The Lessee, Lessee's employees, agents, and sublessees and their employees, and agents, agree to abide by all laws, regulations and ordinances of the Colorado River Indian Tribes now in force and effect or that may be hereafter in force and effect, provided that no such laws, ordinances or regulations shall act in any manner whatsoever that will change or alter the terms and conditions of this lease without the expressed written consent of the Lessee.

39. EMPLOYMENT

The Lessee agrees to give employment preference to tribal members who are qualified, available, and who perform in a satisfactory manner.

40. INSPECTION

The Secretary and the Lessor and their authorized representatives shall have the right, at any reasonable times during the term of this lease,

to enter upon the leased premises, or any part thereof, to inspect the same and all buildings and other improvements erected and placed thereon.

41. DELIVERY OF PREMISES

At the termination of this lease, Lessee will peaceably and without legal process deliver up the possession of the leased premises in good condition.

42. LEASE BINDING

This lease and the covenants, conditions and restrictions hereof shall extend to and be binding upon the successors, heirs, assigns, executors and administrators of the parties hereto.

43. INTEREST OF MEMBER OF CONGRESS

No Member of, or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this provision shall not be construed to extend to this contract if made with a corporation or company for its general benefits.

44. VALIDITY

This lease, and any modification of or amendment to this lease, shall not be valid or binding upon either party hereto until approved by the Secretary.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands.

LESSEE: SAGUARO CHEVROLET, INC.

By: [signature]

LESSOR: COLORADO RIVER INDIAN TRIBES

[signature]
Chairman, Tribal Council

[signature]
Secretary, Tribal Council
(Per Council Action of August 11, 1981)

APPROVED:

[signature]
Superintendent 10/8/81
Colorado River Agency
DATE: ______________________

# A C K N O W L E D G M E N T

LEASE NO. B-549-CR

STATE OF Arizona )
) ss.
County of Yuma )

On this 12th day of August, 1981, before me ______, the undersigned officer, personally appeared ______, known to me to be the person(s) whose name(s) is subscribed to the within instrument and acknowledge that they executed the same for the purpose therein contained.

In witness whereof I hereunto set my hand and official seal.

(S E A L)

[signature]
Notary Public in and for said County and State
Residing at Parker
My Commission expires 4-23-84

STATE OF Arizona )
) ss.
County of Yuma )

On this 20th day of August, 19 81, before me Gloria A. McVey, the undersigned officer, personally appeared Anthony Drennan, Sr., and Harry Laffoon, who acknowledged themselves to be the Chairman and Secretary respectively of the Colorado River Indian Tribal Council and that as such are authorized to do, who executed the within instrument for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

(S E A L)

[signature: Gloria A. McVey]
Notary Public in and for said County and State
Residing at Parker, Arizona
My Commission expires ______

STATE OF Arizona )
) ss
County of Yuma )

On this 20th day of August, 19 81, before me Gloria A. McVey, the undersigned officer, personally appeared Walter R. Mills, who acknowledged himself to me to be the ///// Superintendent of the Colorado River Indian Agency whose name is subscribed to the within instrument as a concurring party, and acknowledged to me that he executed the same.

In witness whereof, I hereunto set my hand and official seal.

(S E A L)

[signature: Gloria A. McVey]
Notary Public in and for said County and State
Residing at Parker, Arizona
My commission expires ______

# COLORADO RIVER TRIBES INDUSTRIAL PARK

Colorado River Indian Reservation *Sec. 7, Twp. 9 N., R. 19 W.*
Parker, Arizona

