**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAGUARO CHEVROLET, INC., an Arizona Corporation,** | ) | |
| **Plaintiff,** | ) | **No. 06-714** |
| **vs.** | ) | **Judge Emily C. Hewitt** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

SAMANTHA KLEIN
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
Address for USPS delivery:
P.O. Box 663
Washington, D.C. 20044-0663
Street Address (for Fedex or messenger delivery):
601 D St. NW, Rm. 3206
Washington DC 20004
samantha.klein@usdoj.gov
(202) 305-0474 (PHONE)
(202) 305-0506 (FAX)

OF COUNSEL:
Janet L. Wong
U.S. Department of the Interior
Office of the Solicitor

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. Plaintiff's Claim For Money Damages Must Fail Because Plaintiff Is Not in Privity of Contract with the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Paragraph 33 of the Lease Does Not Create Privity of Contract . . . . . . . . . . . . . . . 4

2. None of the Other Lease Provisions Cited by Plaintiff Create Privity of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Plaintiff's Claim for Specific Performance Must Fail Because This Court May Not Order Such Equitable Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

### FEDERAL CASES

Colorado Dept. of Human Services v. United States,
74 Fed.Cl. 339 (Fed. Cl. 2006) . . . . . 13

Martinez v. United States,
333 F.3d 1295 (Fed.Cir. 2003) (en banc) . . . . . 13

McNabb v. United States,
54 Fed. Cl. 759 (Fed. Cl. 2002) . . . . . 4, 5, 6, 13

Navajo Nation v. United States,
46 Fed. Cl. 217 (Fed. Cl. 2000) . . . . . 9, 11, 12

Navajo Nation v. United States,
68 Fed. Cl. 805 (Fed. Cl. 2005) . . . . . 9

Sangre de Cristo Devel. Co. v. United States,
932 F. 2d 891 (10th Cir. 1991), cert. denied, 503 U.S. 1004 (1995) . . . . . 2, 4

United States v. Algoma Lumber Co.,
305 U.S. 415 (1939) . . . . . 2, 4, 5, 7, 10

United States v. Navajo Nation,
537 U.S. 488 (2003) . . . . . 9

United States v. Testan,
424 U.S. 392 (1976) . . . . . 13

Warr v. United States,
46 Fed. Cl. 343 (Fed. Cl. 2000) . . . . . 2, 4, 5, 6, 9, 10

### FEDERAL STATUTES

5 U.S.C. § 701 . . . . . 13
25 U.S.C. § 415 . . . . . 2, 6
28 U.S.C. § 1491 . . . . . 1

### FEDERAL RULES

RCFC 12(b)(1) . . . . . 1, 13
RCFC 12(b)(6) . . . . . 1, 13

**FEDERAL REGULATIONS**

25 C.F.R. part 131 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
25 C.F.R. part 162 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5
25 C.F.R. § 131.5(c) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25 C.F.R. § 131.5(d) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 C.F.R. § 131.5(f) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25 C.F.R. § 131.5(g)(1) (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8
25 C.F.R. § 131.12 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
25 C.F.R. § 131.14 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 C.F.R. § 162.604(c) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25 C.F.R. § 162.604(d) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
25 C.F.R. § 162.604(f) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
25 C.F.R. § 162.604(g)(1) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8
25 C.F.R. § 162.610 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
25 C.F.R. § 162.612(c)(2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
25 C.F.R. § 162.619 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL REGISTER**

47 F.R. 13326 (March 30, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
66 F.R. 7068 (January 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER**

Exhibit A (Lease Between Richard M. Warr and Yakima Tribal Council, dated April 2, 1992**)** 5, 8, 10, 11

## INTRODUCTION

Plaintiff Saguaro Chevrolet, Inc., a car dealership, has brought an action against the United States to enforce a lease that Plaintiff entered into with the Colorado River Indian Tribes ("CRIT"), or in the alternative, for damages in the amount of $1.675 million. Defendant submits this reply memorandum of law in further support of its motion to dismiss Plaintiff's Complaint. Plaintiff alleges, incorrectly, that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1491 (the "Tucker Act") because Plaintiff's lease with CRIT required approval by Defendant and the lease contains references to the United States, which, Plaintiff incorrectly contends establish privity of contract between Plaintiff and the United States. However, none of the cited clauses establish such privity, which is a necessary showing to establish subject matter jurisdiction. Therefore, Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC"). In the alternative, Defendant moves pursuant to RCFC 12(b)(6) to dismiss Plaintiff's Complaint for failure to state a claim for money damages upon which relief can be granted. Further, this Court is not vested with the authority to order equitable relief such as specific performance of a lease. Therefore, this Court should dismiss Plaintiff's Complaint in its entirety.

## ARGUMENT

### A. Plaintiff's Claim For Money Damages Must Fail Because Plaintiff Is Not in Privity of Contract with the United States

Plaintiff acknowledges that it bears the burden of establishing subject matter jurisdiction. See Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof ("Pl. Mem.") at 3. (Doc. 9). As explained in Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof ("Def. Mem.")

(Doc. 6-1), the jurisdiction of this Court is set forth in the Tucker Act, which provides the Court of Federal Claims "jurisdiction over a claim where a substantive right exists elsewhere, such as in a contract or 'money-mandating' statute or regulation." See Def. Mem. at 5-6, quoting Warr v. United States, 46 Fed. Cl. 343, 346-47 (Fed. Cl. 2000). In order to establish subject matter jurisdiction here, Plaintiff bears the burden of showing that the lease in question created privity of contract between Plaintiff and Defendant. See Def. Mem. at 7-8. Plaintiff has failed to do so.

As a rule, "the United States is not liable to third parties when it contracts with them on behalf of Indian tribes." Warr, 46 Fed. Cl. at 349, quoting Sangre de Cristo Dev. Co. v. United States, 932 F.2d 891, 895 (10th Cir. 1991). It has long been established that by acting as an agent or trustee for Indian allottees, the Government does not bind itself contractually to third parties "in the absence of any action taken by the government or on its behalf indicating such a purpose." United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939) (concerning lumber allotments).

Here, pursuant to statute, the Bureau of Indian Affairs ("BIA") has acted only as an approving authority or trustee on behalf of the CRIT, who are themselves in privity with Plaintiff. See 25 U.S.C. § 415(a) ("Any restricted Indian lands, whether tribally, or individually owned, may be leased by the Indian owners, with the approval of the Secretary of the Interior. . . . [A]ll leases and renewals shall be made under such terms and regulations as may be prescribed by the Secretary of the Interior"); see also Sangre de Cristo, 932 F.2d at 895 (construing 25 U.S.C. § 415). Thus, the only role for the United States in the instant case to enter into a lease under 25 U.S.C. § 415 is through an approval role, not a party role.

The lease in question was approved by the BIA pursuant to 25 C.F.R. part 131 (1981), which is now found at 25 C.F.R. part 162 (2006). In 1982, the BIA renumbered multiple sections of its regulations, including 25 C.F.R. part 131 (1981), which was renumbered as 25 C.F.R. part 162 (2006), without any other changes. See 47 F.R. 13326, 13327 (March 30, 1982). As this change was administrative, it was effective immediately. See id. ("Since this document contains only administrative changes, the 30-day deferred effective date is dispensed with. . . ."). In 2001, BIA announced another final rulemaking that included amendments to 25 C.F.R. part 162 (2006). See 66 F.R. 7068, 7079 (January 22, 2001). This rulemaking, which was announced on January 22, 2001, was effective as of March 23, 2001.[1/] See id. at 7068.

Neither the renumbering of the regulations in 1982, nor the reorganization of the regulations in 2001, had any impact on whether privity of contract exists between Plaintiff and the United States. The 1982 rulemaking simply renumbered the regulations. The 2001 rulemaking acted to separate out regulations governing agricultural leases into a distinctive subpart, which had previously been regulated under the same provisions as business and residential leases. See 66 F.R. at 7068. BIA also added new collection and enforcement provisions for business and residential leases that were modeled on the provisions enacted for agricultural leases.[2/] See 66 F.R. 7068, 7079 and 7084.

---

[1/] Although the regulations were not effective until two months after they were announced, there was never any two month gap when there were no effective regulations or any termination of the regulatory framework, as suggested by Plaintiff. See Plaintiff's Supplement to Its Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof ("Pl. Supp.") at 1-2. (Doc. 10). Rather, the old regulations were in effect until the new ones went into effect.

[2/] Plaintiffs relies on the language contained in Paragraph 33 of the lease to show privity of contract, as discussed below. This language is mandated by the BIA regulations and was
(continued...)

As discussed by Defendant in detail in the initial memorandum of law, case law demonstrates that approval of the lease by the United States does not put Plaintiff in privity of contract with Defendant. See Def. Mem. at 8-10, discussing Algoma Lumber Co., 305 U.S. 415; Warr, 46 Fed. Cl. 343; see also Sangre De Cristo, 932 F.2d 891. Although not apparent from the face of the Complaint, Plaintiff, in its reply memorandum, now alleges that privity of contract exists based on certain specific references to the United States in the lease.

**1. Paragraph 33 of the Lease Does Not Create Privity of Contract**

Plaintiff first points to Paragraph 33 of the lease, which states: "While the leased premises are in trust or restricted status, all of the Lessee's obligations under this lease, and the obligations of their sureties, are to the United States as well as to the Lessor." Pl. Mem. at 4, citing Pl. Exhibit A, ¶ 33. The BIA requires this language to be included in any lease entered into pursuant to its regulations. See 25 C.F.R. § 131.5(g)(1) (1981), 25 C.F.R. § 162.604(g)(1) (2006) (containing identical language). Further, as this Court found in McNabb v. United States, 54 Fed. Cl. 759 (Fed. Cl. 2002), such language does not create privity of contract between the United States and a party entering into a lease for the use of restricted or trust lands.

In McNabb, the plaintiffs had entered into sharecropping leases for land on an Indian reservation, whereby BIA assumed responsibility for 80 percent of the costs incurred growing crops and received 80 percent of the profits. McNabb, 54 Fed. Cl. at 760. Following a denial of subsidy payments by the Farm Service Agency of the U.S. Department of Agriculture, the plaintiffs sued the United States on a variety of theories, including breach of contract by the BIA.

---

[2/](...continued)
contained in the regulations governing leases as they existed in 1981, when the lease was entered into, and as the regulations exist today. Compare 25 C.F.R. § 131.5(g)(1) (1981) to 25 C.F.R. § 162.604(g)(1) (2006).

Id. at 761. The plaintiffs asserted that the BIA had assumed almost total managerial control under the lease. However, this Court, citing to Algoma Lumber, Sangre de Cristo, and Warr as examples of the government's role as a manager and protector of Native American affairs, found that such a claim was distinguishable from a situation where the BIA enters into a contract as a party. Id. at 769. In finding that there was no privity of contract between the plaintiffs and the United States, this Court examined the decision in Algoma Lumber, and found,

> The Supreme Court in Algoma Lumber noted that the government has plenary power to take appropriate measures to safeguard the disposal of property of which the Indians are the substantial owners. Exercise of that power does not necessarily involve the assumption of contractual obligations by the government. Their assumption is not to be presumed in the absence of any action taken by the government or on its behalf indicating such a purpose. The Algoma court concluded, regarding the actions taken by the Superintendent and the Secretary in contracting, that all that was done by the government officials in supervising the execution of the contracts and their performance was consistent with the exercise of its function as protector of the Indians without the assumption by the United States of any obligation to the purchasers of the timber, and no implied obligation on its part arises from the performance of that function.

Id. (internal citations omitted).

The plaintiffs in McNabb also pointed to the same language in the standard BIA lease form as Plaintiff relies on in Paragraph 33 of the lease, arguing that it created privity of contract because such language grants the United States the power to enforce a lease. This Court rejected that claim finding that, first BIA regulations require the language to be included in every contract approved pursuant to 25 C.F.R. part 162.[3/] The court went on to find that such language, as well

---

[3/] In Warr, the lease in question was also entered into pursuant to 25 C.F.R. part 162, and included identical language to that of Paragraph 33. See Exhibit A (Lease Between Richard M. Warr and Yakima Tribal Council, dated April 2, 1992) at page 2, ¶ 13; see also Warr, 46 Fed. Cl. at 348. In Warr, this Court found that there was no privity of contract based upon the lease. Specifically, the Court found that the United States' role in granting approval for the lease agreement, which included a signature by the authorized representative of the Secretary of the

(continued...)

as other authorities cited to by the plaintiffs, including 25 U.S.C. § 415, did not provide BIA with the authority "to enter into leases on Tribal lands in the capacity of the lessor, as opposed to in the role of an approving official or guardian, acting on behalf of Native American lessors." Id. at 773. In doing so, this Court rejected the argument that the United States intended to be contractually bound, finding instead that the United States may be contractually bound only by agents who possess actual contractual authority. See id. at 768-71; see also Warr, 46 Fed. Cl. at 350 ("In suits against the United States, a plaintiff must also demonstrate that the government representative who entered the agreement had actual authority to bind the government.").

Similarly, here, Plaintiff argues that BIA assumed the role of landlord, thus creating privity of contract. See Pl. Mem. at 4-5, 8. However, as was the case in McNabb, the language contained in Paragraph 33 of the lease merely enables the BIA to act in its customary role as the guardian and agent of the affected Indians. It does not conflict with or negate the lease language establishing that the lease as between the CRIT and Plaintiff. See Pl. Mem., Pl. Exhibit A ("This Contract is made and entered into on this 20th day of August by and between the COLORADO RIVER INDIAN TRIBES hereinafter called the 'Lessor'. . . and SAGUARO CHEVROLET, hereinafter called the 'Lessee'. . . ."). Nor does it provide the United States with any consideration, as alleged by Plaintiff, see Pl. Mem. at 7-8, because as this Court found in McNabb, the ability to enforce a lease on behalf of an Indian tribe does not create privity of contract. Thus, Plaintiff's claims that the language in Paragraph 33 of the lease evidenced an

---

[3/](...continued)
Interior on the lease itself, as well as notice of cancellation from the WIP Superintendent, did not put the United States in privity of contract with the plaintiff. Id. at 348.

intent by the United States to assume a contractual obligation or provided a showing of consideration, see Pl. Mem. at 7-8, must fail.

**2. None of the Other Lease Provisions Cited by Plaintiff Create Privity of Contract**

Additionally, none of the other cited paragraphs in the lease authorized the United States to act as landlord or otherwise provide privity of contract. See Pl. Mem. at 5-6. Rather, those provisions simply enable the BIA to act in its customary role as the guardian and agent of the affected Indians. As the Supreme Court found in Algoma Lumber, privity of contract is not assumed in the absence of specific actions by the government where the "form of the contract and the procedure prescribed for its execution and approval conform to the long-established relationship between the government and the Indians, under which the government has plenary power to take appropriate measures to safeguard the disposal of property of which the Indians are the substantial owners." 305 U.S. at 421.

Here, many of the lease provisions that Plaintiff alleges establish privity of contract are addressed in and, as to some provisions, mandated by BIA regulations. For example, Paragraph 7 of the lease directs lease payments be made to the Secretary. See 25 C.F.R. § 131.5(f) (1981); 25 C.F.R. § 162.604(f) (2006) (containing identical language). Paragraph 15 authorizes the Secretary to require a surety bond for the full term of the lease. See 25 C.F.R. § 131.5(c) (1981); 25 C.F.R. § 162.604(c) (2006) (containing identical language). Paragraph 17 prohibits the sublease, assignment or transfer of the lease without written approval of the Secretary. See 25 C.F.R. § 131.12 (1981); 25 C.F.R. § 162.610 (2006) (containing identical language). Paragraph 20 requires encumbrances be approved by Secretary and requires financial statements and analysis pertinent to the encumbrances be provided to Secretary as requested. See 25 C.F.R. §

131.12 (1981); 25 C.F.R. § 162.610 (2006) (containing identical language). Paragraph 24 requires public liability insurance. See 25 C.F.R. § 131.5(d) (1981); 25 C.F.R. § 162.604(d) (2006) (containing identical language). Paragraph 25 requires fire and damage insurance. See 25 C.F.R. § 131.5(d) (1981); 25 C.F.R. § 162.604(d) (2006) (containing identical language). Paragraph 28 authorizes the Secretary to cancel the lease upon default to the Lessor. See 25 C.F.R. § 131.14 (1981); 25 C.F.R. § 162.619 (2006). Lastly, as discussed above, Paragraph 33 provides that all of the lessee's obligations under the lease are to the United States as well as the lessor while the leased premises are in trust or restricted status. See 25 C.F.R. § 131.5(g)(1) (1981); 25 C.F.R. § 162.604(g)(1) (2006) (containing identical language).

Nor do the lease provisions that require Plaintiff comply with other regulations or statutes create privity of contract with the United States. For example, Paragraph 34 of the lease requires necessary anti-pollution devices, including those required by CRIT ordinances and federal law, and Paragraph 35 requires compliance with the Antiquities Act.[4/] Instead, these lease provisions merely recite legal requirements that any party would be required to comply with.

---

[4/] For example, the lease at issue in Warr contained a provision that the lessee was required to comply with "environmental protection agencies' regulations." See Exhibit A, at page 3, ¶ 12; see also Exhibit A at page 4 under the heading "Water Pollution" ("[t]he lessee agrees to comply with all applicable water pollution control laws, regulations and state and federal pollution control agency recommendations. . . .").

Plaintiff relies on Navajo Nation v. United States, 46 Fed. Cl. 217 (Fed. Cl. 2000),[5] a case where no privity of contract with the United States was found, to show that there is privity of contract between Plaintiff and the United States by distinguishing that case from the instant case. However, the lease provisions at issue in Navajo Nation are actually analogous to this case. In Navajo Nation, this Court found no privity of contract as between the Indian tribe and the United States based on a lease between the Navajo Nation and a third party to mine coal on tribal land.[6] As Plaintiff details, in Navajo Nation, the United States was responsible for approving the lease in question and participating in the administration of the lease by (1) making reasonable royalty payment adjustments, (2) suspending mining operations in the event of unsatisfactory economic conditions or inadequate marketing facilities, (3) prohibiting assignment of the leasehold interests without prior approval by the Secretary and the Indian tribe, (4) nullifying the lease for violations of the lease covenants or unlawful conduct and (5) inspecting the property and lessee's accounts. See Pl. Mem. at 4, citing Navajo Nation, 46 Fed. Cl. at 234-35. This Court also noted that additional provisions of the lease in Navajo Nation called "for Secretarial involvement in various aspects of the administration of the lease." Id. at 235. This Court found none of the provisions created privity of contract with the United States.

[5] This Court noted in a subsequent decision that the judgment in Navajo Nation, which was originally overturned by the Court of Appeals of the Federal Circuit, was restored by virtue of the Supreme Court's decision in United States v. Navajo Nation, 537 U.S. 488 (2003). See Navajo Nation v. United States, 68 Fed. Cl. 805, 807 (Fed. Cl. 2005).

[6] In addition to the contract claims, the Navajo Nation also alleged breach of trust. To the extent that Plaintiff relies on Navajo Nation to argue that there has been any breach of trust, this Court has previously drawn a sharp distinction between situations where a tribe is alleging breach of trust, versus allegations by a third party. See Warr, 46 Fed. Cl. at 349. As discussed in detail in Defendant's initial memorandum of law, the United States does not owe any trust duties to Plaintiff, a car dealership. See Def. Mem. at 11-12.

Plaintiff's reliance on the following lease provisions to show privity of contract must similarly fail, as they are parallel provisions to those in the Navajo Nation lease. Paragraph 7 states that any changes in the use of the land resulting in changes in rent must be approved by the Secretary.[7/] Paragraph 17 prohibits the sublease, assignment or transfer of the lease without written approval of the Secretary. Paragraph 20 requires the lessee to furnish any requested financial statements or analysis pertinent to any encumbrances on the leasehold interest as requested by the Secretary.[8/] Paragraph 22 requires the lessee to furnish evidence of payment of taxes upon written application. Paragraph 28 allows the Secretary to cancel the lease upon default to the Lessor.[9/] Paragraph 40 gives the Secretary the right to enter and inspect the premises. [10/]

---

[7] Nor does the provision in Paragraph 7 that directs rental payments to be made to the Secretary "for the use and benefit of the Colorado River Indian Tribes...." create privity of contract with the United States. See Pl. Exhibit A, ¶ 7; see also Algoma Lumber, 305 U.S. at 420 (finding no privity of contract where payments on lumber contracts were made to the Superintendent and deposited in the U.S. Treasury). However, in this case, the lease payments were actually made to CRIT by Plaintiffs. See Compl. ¶ 20.

Additionally, Paragraph 7 states that as "further consideration for this lease," Plaintiff agreed to sell cars and trucks to enrolled member of CRIT without payment of Arizona state sales tax. Clearly this is a benefit that flows to CRIT and not the United States. Similar to the provision in Paragraph 7 regarding the payment of rent, the requirement that a rental bond be deposited by the lessee with the Secretary in Paragraph 15 for the express purpose to "guarantee payment of rent only" does not create privity of contract.

[8/] The lease in Warr similarly contained a provision requiring the approval of the Secretary for subleases and assignments. See Exhibit A, at page 2, ¶ 6.

[9] See also Warr, 46 Fed. Cl. at 345-46 (no privity of contract created where the WIP Superintendent notified the plaintiff of the lease cancellation).

[10/] The lease in Warr similarly contained a provision providing the Secretary with the right to inspect the premises. See Exhibit A, at page 3, ¶ 13.

Further, as in Navajo Nation, none of the remaining provisions in the lease calling for Secretarial involvement create privity of contract. Rather they simply involve the administration of the lease and Plaintiff fails to cite to any authority to the contrary. Paragraph 9 gives the Secretary approval power over general plans and architectural designs.[11/] Paragraph 13 authorizes the Secretary to approve the type and amount of water usage. Paragraph 14 requires 10 days notice to be given to the Secretary prior to the commencement of construction, repair or alteration of improvements on the property. Paragraph 23 authorizes the Secretary to provide lessee with written notice of a failure to pay liens or charges payable. Paragraph 27 states that where "the Lessee, Lessor and the Secretary are unable to reach an agreement as required by this lease, and it becomes necessary to submit a matter to arbitration for settlement, an Arbitration Board shall be established" and provides that the decision is binding on the lessor and lessee, subject to approval of the Secretary, provided that the Secretary "cannot be legally bound by any decision which might conflict with the interests of the Indians or United States Government."[12/] Paragraph 37 requires copies of all notices and demands be sent to the Secretary.

Finally, as in Navajo Nation, the terms of the lease clearly designate CRIT as lessor and Plaintiff as lessee. See Navajo Nation, 46 Fed. Cl. at 234. Indeed, as this Court found was the case in Navajo Nation, "[i]n fact, one can highlight every reference to the Secretary and arrive at

---

[11/] The lease in Warr similarly contained a provision that any construction was subject to the approval of the Secretary. See Exhibit A, at page 3, ¶ 10.

[12] Further, 25 C.F.R. § 162.612(c) (2006) states that a lease may provide for lease disputes through arbitration or some other alternative dispute resolution method. While Paragraph 27 does provide for arbitration, it does not appear to give the United States an independent right to require mediation, as stated by Plaintiffs. See Pl. Mot. at 5, citing Pl. Exhibit A at ¶ 27.

the same conclusion - the language of the contract does no more than confirm the Secretary's role under the [applicable statutory and regulatory structure]." 46 Fed. Cl. at 234.

Plaintiffs fail to point to a single case where privity of contract was established between the United States and a lessee such as Plaintiff. In contrast, the decisions in Algoma, Sangre De Cristo, Warr and McNabb make clear that where, as here, the United States grants its approval to a lease pursuant to statutory and regulatory authority, and administers the contract in accordance with the applicable statutory and regulatory framework, the United States may not be considered a party to the lease.[13] Accordingly, in the absence of privity, Plaintiff cannot bring or maintain an action against the United States. In this circumstance, the United States has not waived its sovereign immunity and, as a result, this Court must dismiss Plaintiff's claims for money damages for lack of subject matter jurisdiction. In the alternative, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

**B. Plaintiff's Claim for Specific Performance Must Fail Because This Court May Not Order Such Equitable Relief**

In the Complaint, Plaintiff also requested that this court set aside the termination of the lease and order specific performance because Plaintiff "want to continue its [l]ease with CRIT." Compl. ¶ 21. However, as Defendant has previously explained, as a general rule, this Court is not vested with the authority to order specific performance. See Def. Mem. at 13. Plaintiff now argues that it is not requesting specific performance, but rather is simply requesting this Court to remand this matter back to the Superintendent with the direction to withdraw the Termination Decision. See Pl. Mem. at 9-10. Plaintiff is in essence requesting this Court to overturn the Superintendent's decision as arbitrary and capricious under the Administrative Procedure Act

[13] Nor is Defendant a party to any implied-in-fact contract with Plaintiff. See Def. Mem. at 12, n. 9.

("APA"), 5 U.S.C. § 701, et. seq. The APA vests district courts with the authority to overturn an agency decision after exhaustion of administrative remedies. However, such an action is not within this Court's jurisdiction.[14/] See Colorado Dept. of Human Servs. v. United States, 74 Fed.Cl. 339, 347 (Fed. Cl. 2006) (stating that "the Federal Circuit, however, has held that the CFC 'lacks APA jurisdiction'"), quoting Martinez v. United States, 333 F.3d 1295, 1313 (Fed.Cir. 2003) (en banc); McNabb, 54 Fed. Cl. at 767.

Additionally, as Plaintiff acknowledges, this Court's remand authority under the Tucker Act is based solely on the jurisdiction of the Court. See Pl. Mem. at 10; United States v. Testan, 424 U.S. 392, 404, (1976) ("[t]he remand statute, thus, applies only to cases already within the [Court of Federal Claims'] jurisdiction"). In this case, jurisdiction depends on a finding or privity of contract with the United States. As explained above, and in Defendant's initial memorandum of law, Plaintiff has failed to make such a showing, and thus this Court does not have any remand power.[15/]

## CONCLUSION

For the foregoing reasons, Defendant respectfully request that this Court dismiss Plaintiff's Complaint pursuant to RCFC 12(b)(1) because Plaintiff has not established a source providing a substantive right to money damages, or, in the alternative, pursuant to RCFC 12(b)(6) for failure to state a claim because with respect to the lease, there is no privity of

---

[14/] Further, as the Superintendent's decision itself is not a decision subject to direct appeal to a district court, Plaintiff has also brought a suit in an Arizona district court under the APA challenging the decision by the Interior Board of Indian Affairs ("IBIA") which did not overturn the Superintendent's cancellation of the lease, because the IBIA found Plaintiff's appeal to be untimely. See Def. Mem. at 2-3 and n.1.

[15/] Further, the remand power of this Court under the Tucker Act must necessarily be narrow, where as here, the request for remand implicates the sovereign immunity of the United States.

contract with Defendant.

Dated: March 15, 2007

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

s/*Samantha Klein*
SAMANTHA KLEIN
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
Address for USPS delivery:
P.O. Box 663
Washington, D.C. 20044-0663
Street Address (for Fedex or messenger delivery):
601 D St. NW, Rm. 3206
Washington DC 20004
samantha.klein@usdoj.gov
(202) 305-0474 (PHONE)
(202) 305-0506 (FAX)

OF COUNSEL:
Janet L. Wong
U.S. Department of the Interior
Office of the Solicitor
Sandra Day O'Connor U.S. Courthouse, Suite 404
401 West Washington Street, SPC 44
Phoenix, AZ 85003-2151
(602) 364-7880 (PHONE)
(602) 364-7885 (FAX)