**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAGUARO CHEVROLET, INC., an Arizona corporation,** | ) | |
| **Plaintiff,** | ) | **No. 06-714** |
| **vs.** | ) | **Judge Emily C. Hewitt** |
| **THE UNITED STATES** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S SUR-SURREPLY REGARDING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM**

WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC
#00451100
Jack D. Klausner, AZ Bar #004139
Catherine Conner, AZ Bar #007368
3550 North Central Avenue, Suite 1500
Phoenix, Arizona 85012-2188
Attorneys for Plaintiff
jklausner@warnerangle.com
cconner@warnerangle.com
(602) 264-7101 (PHONE)
(602) 234-0419 (FAX)

# TABLE OF CONTENTS

Page

PLAINTIFF'S SUR-SURREPLY REGARDING MOTION TO DISMISS . . . . . . . . . . . 1

SUR-SURREPLY MEMORANDUM REGARDING MOTION TO DISMISS . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. DISMISSAL IS NOT PROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Privity of Contract Exists Between Saguaro and the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. Federal Regulations Demonstrated Intent to Contract . . . . . 7

2. There Was Consideration Here . . . . . . . . . . . . . . . . . . . . . . . 7

3. Saguaro Has Stated A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. This Court Has Remand Powers . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**FEDERAL CASES** **Page**

McNabb v. United States,
54 Fed.Cl. 759 (Fed.Cl. 2002) . . . . . . . . . . . . 8, 9

Navajo Nation v. United States,
46 Fed.Cl. 217 (2000) . . . . . . . . . . . . 6, 7

Phoenix Western Holding Corp. v. Gleeson
18 Ariz. App. 60, 500 P.2d 320 (Ct. App. 1972) . . . . . . . . . . . . 11

Rawlings v. Apodaca,
151 Ariz. 149, 726 P.2d 565 (1986) . . . . . . . . . . . . 8

United States v. Algoma Lumber Co.,
305 U.S. 415 (1939) . . . . . . . . . . . . 2, 6, 7

Warr v. United States,
46 Fed.Cl. 343 (Fed.Cl. 2000) . . . . . . . . . . . . 3, 10, 12

Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,
201 Ariz. 474, 38 P.3d 12 (2002) . . . . . . . . . . . . 8, 11

**FEDERAL STATUTES**

25 U.S.C. §415(a) . . . . . . . . . . . . 3
28 U.S.C. §1491(a)(1) . . . . . . . . . . . . 12
28 U.S.C. §1491(a)(2) . . . . . . . . . . . . 13

**FEDERAL REGULATIONS**

25 C.F.R. §131.5 . . . . . . . . . . . . 2
25 C.F.R. §131.5(a) . . . . . . . . . . . . 3
25 C.F.R. §162.619 . . . . . . . . . . . . 5

**FEDERAL REGISTER**

26 Fed.Reg. (November 23, 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SAGUARO CHEVROLET, INC., an Arizona corporation,** | ) | |
| **Plaintiff,** | ) | **No. 06-714** |
| **vs.** | ) | **Judge Emily C. Hewitt** |
| **THE UNITED STATES** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S SUR-SURREPLY REGARDING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM**

Plaintiff, SAGUARO CHEVROLET, INC., ("Saguaro"), hereby files its Sur-SurReply in response to the Motion to Dismiss ("Motion") filed by Defendant, THE UNITED STATES, ("United States"). As set forth in the accompanying memorandum of points and authorities, the Motion to Dismiss should be denied because this Court has subject matter jurisdiction over Saguaro's claims and relief can be granted by this Court on those claims.

**MEMORANDUM IN SUPPORT OF SUR-SURREPLY**

**INTRODUCTION**

After the filing of a Response brief by the United States and a conference call with the Court, the parties have been ordered to file additional briefing on the question of the jurisdiction of this Court to hear this case. Specifically, the question before this Court is whether there is privity of contract between Saguaro and the United States. As previously

stated, Saguaro brought this complaint in connection with a Lease between it, the Colorado River Indian Tribes ("CRIT"), and the United States. The Lease was provided to the Court as an attachment to Saguaro's Response to Motion to Dismiss.

The Lease included the provision, mandated by 25 C.F.R. §131.5, that all of Saguaro's obligations under the Lease be owed to the United States as well as to the CRIT ("Dual Landlord Provision"). This statutory language including the Dual Landlord Provision was enacted after the decision in United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939), thus creating the requisite governmental action indicating the intent of the United States to bind itself contractually to third parties.

However, actions by the United States on behalf of Indian Tribes does not necessarily involve the assumption of contractual obligations by the government in the absence of action indicating such a purpose. United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939). There must be something more than governmental action under a lease. That something more occurred here when the United States terminated this Lease in violation of its terms, using the Dual Landlord Provision. Hence, the presence of subject matter jurisdiction defeats the Motion to Dismiss and allows this matter to be adjudicated on the merits.

Alternatively, if this Court has subject matter jurisdiction over Saguaro's claim, it has the power to Remand the Termination Decision with Orders to the Superintendent to set aside the Termination Decision because it was issued in violation of the Lease. Such an

Order would have the result of achieving a specific enforcement of the Lease as Saguaro requested. Accordingly, the Motion to Dismiss should be denied.

Finally, this Court could find that the Termination Decision by the United States using the Dual Landlord Provision violated the Lease, but that the violation does not confer subject matter jurisdiction. If so, this Court has the power to transfer this case to the United States District Court for the District of Arizona to proceed as a Federal Tort Claims Act claim. Warr v. United States, 46 Fed. Cl. 343, 352 (Fed. Cl. 2000).

**STATEMENT OF FACTS**

As set forth in the Complaint ("CP") and admitted by the United States, the Lease at issue, No. B-549-CR, was for a term of 50 years entered into effective August 20, 1981. CP ¶2. The Lease was approved by the Secretary of the Interior pursuant to 25 U.S.C. §415(a) and 25 C.F.R. 131.5(a) (1981), and contained the Dual Landlord Provision. CP ¶2. This was a Lease of unimproved land, upon which Saguaro was required to and did construct and has continuously operated a new and used automobile and truck sales and service facility. Lease ¶¶ 5 and 8.

The Lease contained a termination provision in Paragraph 28, which required as follows:

> ...should Lessee breach any other covenant of this lease, and if such breach shall continue uncured for a period of sixty (60) days after written notice thereof by the Lessor of the Secretary to Lessee, during which 60-day period Lessee shall have the privilege of curing such breach, then Lessor and the Secretary may either:
>
> * * * * * *

B. Re-enter the premises and remove all persons and property therefrom excluding the property belonging to authorized sublessees, and

* * * * * *

(2) Terminate this lease at any time....

Twenty years into the Lease term, CRIT notified Saguaro on July 20, 2001 and again on August 20, 2001 ("Default Letters") of three alleged non-monetary defaults ("Defaults")[1] under the Lease by Saguaro. CP ¶3. There was no allegation in the Default Letters that Saguaro was in monetary default of the Lease because Saguaro has always timely made its rental payments when due[2]. In both Default Letters, Saguaro was only given ten (10) days notice ("Improper Cure Period") in which to cure the alleged Defaults. CP ¶3, 4. See Default Letters attached hereto as Exhibits "A" and "B". However, the Lease required that Saguaro be given sixty (60) days notice to cure such defaults. CP ¶5; Lease ¶28.

Although the Improper Cure Period was in violation of the Lease, Saguaro provided documentation demonstrating that it was in full compliance with the Lease within the Improper Cure Period. CP ¶¶6, 16-18; See Exhibit "B". Specifically, Saguaro provided documents demonstrating that there had been no sublease, assignment or transfer of the Lease together with evidence of insurance, thus proving there were no Defaults. CP ¶¶6, 16-18; See Exhibit "B".

---

[1] The alleged non-monetary defaults were that Saguaro had violated the Lease prohibition against Sublease, Assignment or Transfer without consent, and that Saguaro had failed to maintain public liability, fire and damage insurance.

[2] Saguaro timely made all of its annual lease payments both before and after the Termination Decision. CP ¶20.

Regardless, the United States[3] exercised the Dual Landlord Provision and terminated the Lease ("Termination Decision") pursuant to Paragraph 28 of the Lease and 25 C.F.R. §162.619. CP ¶7; See Termination Decision dated February 11, 2003 attached hereto as Exhibit "C". The Superintendent's Termination Decision could not have been made without the Default Letters to Saguaro. Lease ¶28. Thus, the Superintendent relied upon CRIT's Default Letters in issuing the Termination Decision. See Exhibit "C".

Without addressing or perhaps even being aware of Saguaro's documentation proving that there were no Defaults, the Termination Decision concluded that Saguaro did not cure the Defaults. See Exhibit "C". Finally, the Termination Decision demanded that Saguaro vacate the leased premises within thirty (30) days after receipt of the Termination Decision. See Exhibit "C". According to the Lease, upon termination, Saguaro was required to deliver possession of the leased premises in good condition. Lease ¶41.

The United States breached the Lease by issuing the Termination Decision because the Default Letters violated the Lease by giving an Improper Cure Period and there were no Defaults. Since the Termination Decision would have caused Saguaro to lose its dealership and repair facilities and its vehicle dealership and repair business, Saguaro appealed from the Termination Decision within the Bureau of Indian Affairs. CP ¶¶8-13 After exhausting all administrative remedies available through the Bureau of Indian Affairs and having obtained

[3] The Termination Decision was made by the acting Superintendent ("Superintendent") for the CRIT. The Superintendent is an employee of the United States Department of the Interior, Bureau of Indian Affairs.

a final decision of the Interior Board of Indian Appeals, (CP ¶13) Saguaro now brings this claim for damages and other relief from the improper Lease enforcement actions by the United States under the Dual Landlord Provisions.

## ARGUMENT

### I. STANDARD OF REVIEW.

Saguaro concurs that it has the burden to establish subject matter jurisdiction by a preponderance of the evidence.

### II. DISMISSAL IS NOT PROPER.

The actions of the United States in using the Dual Landlord Provisions to issue the Termination Decision in breach of the Lease supports a finding that privity of contract exists between Saguaro and the United States.

#### A. Privity of Contract Exists Between Saguaro and the United States.

The United States does not assume contractual obligations simply by acting on behalf of Indian Tribes "in the absence of any action taken by the government or on its behalf indicating such a purpose." United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939). Further, there must be consideration. Navajo Nation v United States, 46 Fed. Cl. 217, 234 (Fed. Cl. 2000).[4] Both requirements are present in this case.

---

[4] Navajo Nation has a somewhat complicated procedural history. The original decision in the Court of Federal Claims was eventually appealed all the way to the United States Supreme Court which effectively "reinstat[ed] the judgement of the Court of Federal Claims." Navajo Nation v. United States, 68 Fed.Cl. 805, 807 (2005).

1. Federal Regulations Demonstrate Intent to Contract.

Algoma was decided in 1939, prior to enactment in 1961 [26 Fed. Reg. 10966 (Nov. 23, 1961)] of the statutory scheme which gave rise to the Dual Landlord Provision. Thus, enactment of this statutory scheme after the Algoma decision constitutes the requisite governmental action to become contractually obligated to third parties under appropriate circumstances. United States v. Algoma Lumber Co., 305 U.S. 415, 421 (1939).

2. There was Consideration Here.

In Navajo Nation, the Court reviewed specific provisions of the lease to see if there was an exchange of benefits between the Plaintiff Landlord and the Defendant United States. The Court considered specific lease provisions allowing the government to do the following: approve the lease and any lease extensions, make royalty adjustments, suspend mining operations, approve lease assignments, nullify leases for lessees failure to comply with lease covenants or unlawful conduct, and inspect the leasehold property and accounts.

Although disapproving of the conduct of the United States, the Navajo Nation Court found no consideration based upon review of the specific lease provisions before it because "[b]y its terms, the lease suggests no benefit flowing to the United States." Id. at 235. However, Navajo Nation did not consider the Dual Landlord Provision present in this Lease. Here, as mandated by its own federal regulation, the Lease contains the Dual Landlord Provision, a specific contractual provision bestowing upon the United States all rights and

benefits of Landlord, including the right to declare a default and exercise all remedies available under the Lease.

The effect of the Dual Landlord Provision is that Saguaro owes all contractual obligations under the Lease to the United States. Conversely, the Dual Landlord Provision imposes upon both Saguaro and the United States a duty of good faith and fair dealing under the Lease when the Dual Landlord Provision is being exercised. All contracts, as a matter of law, include implied duties of good faith and fair dealing, and contract damages are available for breach. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz 474, 490-491, 38 P.3d 12, 28-29 (2002). The essence of this duty is that neither party will act to impair the right of the other to receive the benefits expected to flow from their contractual relationship. Rawlings v. Apodaca, 151 Ariz. 149, 153-154, 726 P.2d 565, 569-570 (1986). Thus, the Dual Landlord Clause can create consideration flowing between Saguaro and the United States.

Whether or not the Dual Landlord Clause creates consideration depends upon the facts and circumstances of each case. In McNabb v. United States, 54 Fed. Cl. 759 (Fed. Cl. 2002), Plaintiffs had farm leases with an Indian Tribe under an arrangement where plaintiffs paid the lease in advance, thus constituting a cash crop lease. The lease, however, referred to the arrangement as a crop share agreement. This was done in order to permit plaintiffs to obtain significant crop subsidies from the Farm Service Agency ("FSA") of the United States Department of Agriculture in excess of $1,000,000.00. Upon learning that the leases were

paid in advance the FSA reclassified them as cash crop leases, treated the leases as part of a scheme to evade FSA payment limitations, and declared plaintiffs ineligible for crop subsidies in the current and succeeding year. Subsequently, the BIA refused to acknowledge the leases as being share crop leases despite them being labeled as such. Plaintiffs then sued the BIA for breach of contract without of first exercising their administrative remedies within the BIA.

In defense of a motion to dismiss for lack of jurisdiction, plaintiffs urged that enforcement of the lease using a Dual Landlord Provision created privity of contract. However, plaintiffs had unclean hands and had unquestionably breached their duty of good faith and fair dealing toward the government by their wrongful conduct in concert with the BIA to obtain crop subsidies to which they were not entitled. As such, there could have been no consideration flowing between plaintiffs and the government to create privity of contract under the Dual Landlord Provision.

Further, plaintiffs had filed suit before exhausting their administrative remedies within the BIA and did not have a final agency decision. Thus, the McNabb Court found the Dual Landlord Provision did not under those circumstances confer privity of contract necessary to allow plaintiffs' claim to proceed. Id. at 771-772. Here, there is no evidence that Saguaro has unclean hands, nor is there any allegation that it breached its duty of good faith and fair dealing toward the government by any wrongful conduct. Thus, there is consideration flowing between Saguaro and the government to create privity of contract under the Dual

Landlord Provision. Further, Saguaro exhausted all administrative remedies within the BIA and obtained a final agency decision before pursuing its claims here.

This case is more akin to Warr v. United States, 46 Fed. Cl. 343 (Fed. Cl. 2000) in which this Court considered a claim for cancellation of a lease for nonpayment of rent where all administrative remedies had been exhausted before the filing of the Complaint. In Warr, the plaintiff had sued the government alleging that he had an express contract for delivery of his share of irrigation water on a continuous basis once he paid or made arrangement to pay for the water based upon pre-irrigation season annual meetings.

In essence, plaintiff was arguing that the government had assumed duties of good faith and fair dealing in taking the necessary actions to be able to deliver the irrigation water. The government moved to dismiss, arguing that the act of requiring plaintiff to pay for the promised irrigation water for his crops did not create the necessary elements of a contract with the government to establish jurisdiction. In rejecting this argument, this Court stated

> ...it appears that plaintiff's attempts to establish a contract claim are based upon the totality of the conversations he had with the WIP Superintendent at the pre-irrigation season annual meetings. Accordingly, defendant's arguments in its Reply fail fully to address plaintiff's claim and therefore, without more, fail to defeat jurisdiction.

Id. at 351. However, plaintiff had not paid his irrigation assessments when due. Thus, this Court found no jurisdiction because plaintiff had not established an obligation of the United States as to which there could have been a breach and granted the government's motion. Id. at 352.

Here, the Lease created an obligation of CRIT and the United States, under the Dual Landlord Provision, to give Saguaro written notice and a sixty (60) day time period in which to cure the alleged Defaults. CRIT breached its obligation to give Saguaro written notice and sixty (60) days in which to cure the alleged Defaults by only giving Saguaro the Improper Cure Period. Moreover, Saguaro proved there were no Defaults within the Improper Cure Period.

The United States then breached its obligations of good faith and fair dealing by using the Dual Landlord Provision to issue the Termination Decision, when Saguaro had proven within the Improper Cure Period that there were no Defaults.[5] Breach of the covenant of good faith can occur without actually breaching an express covenant in a contract. Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 201 Ariz 474, 490-491, 38 P.3d 12, 28-29 (2002). Reference to general principles of agency law confirm that an agent's authority to act must arise from the principal's authority to act. Phoenix Western Holding Corp. v. Gleeson, 18 Ariz. App. 60, 66, 500 P.2d 320, 326 (Ct. App. 1972). Since CRIT could not terminate the Lease where there was an Improper Cure Period and no Defaults, neither could the United States States. For purposes of the Motion, this Court must treat the Lease as having been improperly terminated as alleged in

[5] The United States had an independent right to require arbitration under the Lease. Lease ¶27. Given the Improper Notice Period and proof of no Defaults, the United States could and should have taken this dispute to arbitration rather than issuing the Termination Decision.

the Complaint. The improper termination of this Lease by the United States impaired the right of Saguaro to receive the benefits expected to flow from the Lease. For breach of the covenant of good faith and fair dealing, at a minimum, Saguaro is entitled to damages for loss of the benefits expected to flow from the Lease.[6] Thus, Saguaro has established an obligation of the United States as to which there was a breach. Accordingly, this Motion to Dismiss must be denied. Warr v. United States, 46 Fed. Cl. 343, 352 (Fed. Cl. 2000).

3. Saguaro has Stated a Claim Upon Which Relief can be Granted.

Saguaro has demonstrated privity of contract because there was a regulatory framework which demonstrated both an intention to enter into a contract and consideration. On that basis, pursuant to 28 U.S.C. §1491(a)(1), this Court has jurisdiction to render judgment for damages against the United States upon this claim arising from an express contract. The Motion to Dismiss must be denied. Alternatively, this Court can transfer this case to the Federal District Court for the District of Arizona where Saguaro has a claim pending under the Administrative Procedures Act for dismissal of its appeal by the Interior Board of Indian Appeals. Since the manner in which the Superintendent executed his duties with respect to this Lease is implicated here, this matter could appropriately be transferred for processing as a Federal Tort Claim Act claim. Warr v. United States, 46 Fed. Cl. 343,352 (Fed. Cl. 2000).

[6] Pursuant to ¶29 of the Lease, Saguaro is also entitled to an award of reasonable attorney's fees to be awarded by the Court.

B. This Court Has Remand Powers.

In its Complaint, Saguaro asked this Court to set aside the Termination Decision and order specific performance of the Lease. Complaint ¶21. Pursuant to 28 U.S.C. §1491(a)(2), this Court has the power in any case within its jurisdiction to "...remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." As demonstrated above, privity of contract exists here. Since this Court has jurisdiction over this case it has the power to remand this matter back to the Superintendent with orders to withdraw the Termination Decision. 28 U.S.C. §1491(a)(2). Although such an order would effectively permit specific performance of the Lease, it would not transgress any jurisdictional limits of this Court. By withdrawing the Termination Decision, Saguaro will obtain the relief it seeks, which is to continue the Lease. Since this Court has the power to enter such orders to achieve the relief sought in the Complaint, the Motion to Dismiss must be denied.

## CONCLUSION

Saguaro has demonstrated the presence of intent to contract and consideration supporting the finding, for purposes of this motion, of the existence of privity of contract. The existence of a contract establishes a substantive right to money damages. Alternatively, having demonstrated the existence of privity of contract, this Court has the power to remand this matter to the Superintendent with orders to set aside the Termination Decision. The

Motion to Dismiss must be denied. Additionally, this Court could transfer this case to the Federal District Court for the District of Arizona to proceed under the Federal Tort Claims Act.

Dated: May 3, 2007

Respectfully submitted,

WARNER ANGLE HALLAM
JACKSON & FORMANEK
#0045100

By: *_/s/ Jack D. Klausner by /s/Catherine Conner_*

Jack D. Klausner - 004139
Catherine Conner - 007368
3550 N. Central Avenue, #1500
Phoenix, Arizona 85012
Attorneys for Plaintiffs
jklausner@warnerangle.com
cconner@warnerangle.com
(602) 264-7101 (PHONE)
(602) 234-0419 (FAX)

174874.1