# In the United States Court of Federal Claims

No. 06-714

(E-Filed: July 25, 2007)

| | | |
|---|---|---|
| SAGUARO CHEVROLET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Motion to Dismiss for Lack of Jurisdiction; Motion to Dismiss for Failure to State a Claim; Contract; Lack of Privity; Indian Lessor |

Jack D. Klausner, Phoenix, AZ, for plaintiff. Catherine Conner, Phoenix, AZ, of counsel.

Samantha Klein, with whom was Matthew J. McKeown, Acting Assistant Attorney General, Environment and Natural Resources Division, Department of Justice, Washington, DC, for defendant. Janet L. Wong, Office of the Solicitor, U.S. Department of the Interior, Washington, DC, of counsel.

## OPINION

This action was brought by Saguaro Chevrolet, Inc. (Saguaro or plaintiff), a tenant of the Colorado River Indian Tribes (CRIT), against the government for money damages for breach of a fifty-year lease (Lease) between plaintiff and CRIT. The Lease was approved by the Secretary of the Interior. The action is before the court on defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (defendant's Motion or Def.'s Mot.). Defendant asserts that there is no privity of contract between plaintiff and defendant and therefore the court does not have subject matter jurisdiction over plaintiff's claim or, in the alternative, that plaintiff has failed to state a claim on which relief can be granted. Def.'s Mot. 2. For the following reasons, the court GRANTS defendant's motion to dismiss.

## I. Background

Plaintiff, a car dealership, brought this action to "enforce a contract between [itself, CRIT], and the United States." Complaint (Compl.), Oct. 16, 2006, 1. On August 20, 1981, CRIT and Saguaro entered a fifty-year lease for land on which plaintiff operates a car dealership and service facility. Compl. 1; Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (plaintiff's Response or Pl.'s Resp.), Feb. 23, 2007, App. A (copy of the Lease). Pursuant to 25 U.S.C. § 415(a) (1976) and 25 C.F.R. § 131.5(a) (1981), the Lease between plaintiff and CRIT was approved by the Secretary of the Interior, Compl. 1, because the Secretary of the Interior must approve leases of restricted Indian lands, or Indian land held in trust, 25 U.S.C. § 415(a) (2000) (originally enacted as Act of Aug. 9, 1955, ch. 615, § 1, 69 Stat. 539); 25 C.F.R. § 162.604(a) (2007).[1]

On or about July 20, 2001 and August 20, 2001, CRIT informed plaintiff of three alleged lease defaults. Compl. 1. Plaintiff alleges that, on or about August 31, 2001, it provided CRIT with documents demonstrating that there were no Lease defaults. Compl. 2. CRIT, on or about February 11, 2003, canceled the Lease when the Acting Superintendent of the United States Bureau of Indian Affairs (BIA) provided certified mail notice of cancellation to plaintiff. Id. Plaintiff filed a notice of appeal to the BIA Western Regional Office (Regional Office) on or about March 7, 2003. Id. The Regional Office denied plaintiff's appeal on or about June 15, 2004. Id. Plaintiff alleges that on or about July 14, 2004, it mailed its notice of appeal to the Interior Board of Indian Appeals Office of Hearing and Appeals (IBIA) filing office. Id. On or about December 20, 2005, IBIA issued a denial of receipt of notice of appeal and requested proof of mailing. Id.[2] Plaintiff filed a statement of compliance and proof of mailing on or about January 4, 2006. Id. On May 30, 2006, IBIA dismissed the appeal as untimely filed. Id. Plaintiff filed its complaint with this court on January 16, 2007, seeking "an [o]rder directing specific performance of the [l]ease or for damages in the amount of $1,675,000.00," and attorneys fees.[3] Compl. 4.

---

[1]See infra footnotes 9-10 and accompanying text for further discussion of the applicable regulations and revisions thereto.

[2]The Complaint does not describe any contact between plaintiff and IBIA between the alleged July 14, 2004 mailing of plaintiff's notice of appeal and the alleged December 20, 2005 issuance by IBIA of its denial of receipt of notice of appeal and request for proof of mailing. Complaint (Compl.), Oct. 16, 2006, 2.

[3]Plaintiff requested that the court "set aside the [t]ermination [d]ecision and order specific performance of the [l]ease," because plaintiff "wants to continues its [l]ease with CRIT." Compl. 3. This court does not have jurisdiction to grant specific performance in this non-bid-protest context "unless it is tied and subordinate to a monetary award." Martinez v. United

(continued...)

On January 16, 2007, defendant filed its motion to dismiss under Rule 12(b)(1) or, in the alternative, Rule 12(b)(6), of the Rules of the United States Court of Federal Claims (RCFC). Def.'s Mot. 1. Defendant argues that the court lacks subject matter jurisdiction because plaintiff cannot establish privity of contract between plaintiff and defendant and "thus has failed to assert subject matter jurisdiction over its claim for money damages." Id. at 2. Defendant alternatively argues that "[p]laintiff has failed to state a claim for money damages upon which relief can be granted." Id. Plaintiff filed its response to defendant's motion on February 23, 2007. Pl.'s Resp. 1. Plaintiff filed a Supplement to Its Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (plaintiff's Supplement or Pl.'s Supplement) on February 27, 2007.[4] Defendant filed its Reply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint (Reply or Def.'s Reply) on March 15, 2007. Def.'s Reply 1.

On March 19, 2007, the court held a status conference with the parties to discuss and clarify defendant's contention in its motion to dismiss that "[f]or the purposes of this motion only, the facts contained in [plaintiff's] Complaint are not in dispute." Def.'s Mot. 4. As the court pointed out during the status conference, in defendant's motion and subsequent briefing, defendant did in fact dispute the jurisdictional facts contained in plaintiff's complaint. Id. passim; Def.'s Reply passim. In response to the court's inquiry, defendant stated that it was abandoning its contention that "the facts contained in [plaintiff's] Complaint are not in dispute." Telephonic Status Conference (TSC) Transcript, March 21, 2007 (TSC Tr.) 7:1-7 (Ms. Klein, counsel for defendant). During the status conference, the court also inquired about a copy of a lease defendant had attached to its Reply and identified as a lease between one Richard M. Warr and the Yakima Tribal Council (the Warr lease). Def.'s Reply Ex. A. After a discussion of how it would be possible to verify the authenticity of the Warr lease and the relevance of the Warr lease to this case, TSC Tr. 9:1 – 17:9, defendant stated that it would withdraw the Warr lease and rest its "argument on the strength of the rest of [its] brief," Tr. 17:10-14

---

(...continued)
States, 26 Cl. Ct. 1471, 1476 (1992) (quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)). Because the court does not grant monetary relief in this case, it does not reach the question whether plaintiffs' requested declaratory judgments would be "tied and subordinate to" their requested monetary relief.

[4]The court allowed the filing of plaintiff's supplement notwithstanding the lack of a motion for leave to file the supplement. Order, Mar. 1, 2007. The court deemed the supplement to be part of plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (plaintiff's Response or Pl.'s Resp.), filed on February 23, 2007. Id.

(Ms. Klein). The court then directed the parties to file additional briefing in which defendant would present and plaintiff would respond to a revised brief that contests the jurisdictional facts (in which briefing defendant would not rely on the Warr lease). TSC Tr. 17:24 – 20:20.

On April 6, 2007, defendant filed its Surreply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint (defendant's Surreply or Def.'s Surreply).[5] Def.'s Surreply 1. Plaintiff filed its Sur-Surreply Regarding Defendant's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum (plaintiff's Sur-Surreply or Pl.'s Sur-Surreply) on May 3, 2007.[6] Pl.'s Sur-Surreply 1. The court held oral argument, telephonically, on May 23, 2007. See Transcript of Oral Argument, May 23, 2007 (OA Tr.), passim.

## II. Standards of Review

RCFC 12(b)(1) governs dismissal of claims for lack of subject matter jurisdiction. RCFC 12(b)(1). When a defendant challenges this court's jurisdiction pursuant to RCFC 12(b)(1), the plaintiff bears the burden to show by a preponderance of the evidence that jurisdiction is proper. Reynolds v. Army & Air Force Exch. Serv. (Reynolds), 846 F.2d 746, 748 (Fed. Cir. 1988). In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction over the subject matter, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. Henke v. United States, 60 F.3d 795, 797

---

[5]In addition to clarifying the basis of its arguments, defendant sets forth a standard of review that replaces the standard of review set forth in defendant's Motion at pages 3-4. Defendant's Surreply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint (defendant's Surreply or Def.'s Surreply), Apr. 6, 2007, 2 n.2. Defendant also reiterates its withdrawal of Exhibit A to Defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint (defendant's Reply or Def.'s Reply). Id. at 4 n.3. Exhibit A contained a copy of a lease identified as a lease between one Richard M. Warr and the Yakima Tribal Council (the Warr lease). Def.'s Reply Ex. A. Defendant also deleted references to the Warr lease contained in its prior briefing. Def.'s Surreply 4 n.3.

[6]Plaintiff timely filed its Sur-Surreply Regarding Defendant's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum (plaintiff's Sur-Surreply or Pl.'s Sur-Surreply) on April 27, 2007. However, the filing did not comply with the Rules of the United States Court of Federal Claims (RCFC) because plaintiff's attorney of record did not sign the filing. Plaintiff refiled its Sur-Surreply with the required signature on May 3, 2007. All references to plaintiff's Sur-Surreply refer to the filing made on May 3, 2007.

(Fed. Cir. 1995); Reynolds, 846 F.2d at 747. If the motion to dismiss for lack of subject matter jurisdiction disputes the jurisdictional facts, a court may consider other relevant evidence to resolve the factual dispute. Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds, 846 F.2d at 747.

In order for this court to have subject matter jurisdiction over a claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), plaintiff must identify a "separate source of substantive law," such as a contract, statute or regulation, "that creates the right to money damages." Fisher v. United States (Fisher), 402 F.3d 1167, 1172 (Fed. Cir. 2005); see also Mitchell v. United States, 463 U.S. 206, 216-17 (1983). A money mandating source is one that can "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained" and is "reasonably amenable to the reading that it mandates a right of recovery in damages." United States v. White Mountain Apache Tribe (White Mountain), 537 U.S. 465, 472-73 (2003) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); Greenlee County v. United States (Greenlee), 487 F.3d 871, 875-76 (Fed. Cir. 2007). In order to determine whether there is a money-mandating source, "the Court of Federal Claims asks only whether the plaintiff is within the class of plaintiffs entitled to recover under the [asserted to be money-mandating source] if the elements of a cause of action are established." Greenlee, 487 F.3d at 876.

RCFC 12(b)(6) provides for dismissal of a claim based on a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When considering dismissal under RCFC 12(b)(6), the court must assume that all well-pleaded allegations in the plaintiff's complaint are true and draw all reasonable inferences in favor of the plaintiff. Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Dismissal is appropriate under RCFC 12(b)(6) when the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief. Southfork Sys., Inc. v. United States, 141 F.3d 1124, 1131 (Fed. Cir. 1998).

## III. Plaintiff is Not Within the Class of Plaintiffs Entitled to Recover Under the Asserted Money-Mandating Source

Defendant has moved for dismissal for lack of subject matter jurisdiction, and in the alternative, dismissal for failure to state a claim upon which relief can be granted. Def.'s Mot 1; Def.'s Surreply 1. In Greenlee, the Federal Circuit further addressed the analysis of these alternative grounds for dismissal. 487 F.3d 871. The Federal Circuit affirmed, inter alia, the Court of Federal Claims' grant of the government's motion to dismiss for failure to state a claim. Greenlee, 487 F.3d at 872, 881. The government had moved to dismiss Greenlee's complaint both for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Id. at 874. Without a discussion

of its subject matter jurisdiction, the Court of Federal Claims found that "[n]o mandatory language [in the statute] shows that plaintiff would be entitled to receive a particular payment . . . ." Greenlee County v. United States, 68 Fed. Cl. 482, 486-87 (2005), aff'd, 487 F.3d 871 (Fed. Cir. 2007).

In response to the government's claim on appeal "that the Court of Federal Claims lacked jurisdiction because [the relevant statute] is not 'money-mandating,'" Greenlee, 487 F.3d at 875, the Federal Circuit offered further clarification of the money-mandating analysis and its effect on jurisdiction, id. at 875-878. The Federal Circuit pointed to the Supreme Court's decision in White Mountain and its own decision in Fisher interpreting White Mountain to address the government's argument that "whether a statute is money-mandating . . . depends on whether the plaintiff on the merits can make out a claim under the statute, and that the Court of Federal Claims lacked jurisdiction here because the court properly concluded that Greenlee County was not entitled to recover under the statute." Greenlee, 487 F.3d at 875. The Federal Circuit explained that, based on White Mountain, "determining whether a statute 'can fairly be interpreted' to require the payment of damages or is 'reasonably amenable' to a reading that mandates damages does not require a determination that the plaintiff has a claim on the merits." Greenlee, 487 F.3d at 875.

Because the government had relied on Fisher to support its position that the Greenlee plaintiff's claim should be dismissed for lack of jurisdiction, the Federal Circuit clarified that, in Fisher, it had noted three avenues via which the government may seek dismissal: "(1) lack of subject matter jurisdiction due to the lack of a money-mandating source; (2) failure to state a claim upon which relief can be granted due to lack of a money-mandating source; and (3) failure to state a claim upon which relief can be granted because the plaintiff is ultimately not entitled to recover money damages under the [money-mandating source]." Greenlee, 487 F.3d at 876 (citing Fisher, 402 F.3d at 1172-73). In Greenlee, the Federal Circuit explained that "the first two grounds are resolved by a 'single step' at the outset of the case and 'the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.'" Id. (quoting Fisher, 402 F.3d at 1172-73). "[T]he third ground remains a separate inquiry." Id.

Therefore, this court must first determine whether the source relied upon by the plaintiff is money-mandating by asking "whether the plaintiff is within the class of plaintiffs entitled to recover under the [source asserted to be money-mandating] if the

elements of a cause of action are established."[7] Id. If the source is not money-mandating as to the class in which plaintiff is a member, the court "lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction." Id. In this case, defendant's argument for dismissal under RCFC 12(b)(1) because of the absence of privity of contract between plaintiff and the United States is resolved by the court's analysis of whether there is a money-mandating source under the Fisher test.

"To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government . . . ." Ransom v. United States, 900 F.2d 242, 244 (Fed. Cir. 1990); see Cienega Gardens v. United States (Cienega Gardens), 194 F.3d 1231, 1239 (Fed. Cir. 1998). "In other words, there must be privity of contract between the plaintiff and the United States." Cienega Gardens, 194 F.3d at 1239 (citation omitted). Contract interpretation is a matter of law. Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1368 (Fed. Cir. 2004). Plaintiff asserts that, because the United States approved the Lease, it has a contract with both CRIT and the United States. Compl. 1. However, the court finds that plaintiff is not within the class of plaintiffs entitled to recover under the Lease because there is no privity of contract between plaintiff and the United States.

As both parties recognize, there are several cases that provide guidance for the resolution of this case. Those cases are United States v. Algoma Lumber Co. (Algoma Lumber), 305 U.S. 415 (1939), Sangre de Cristo Dev. Co. v. United States (Sangre de Cristo), 932 F.2d 891 (10th Cir. 1991), cert. denied, 503 U.S. 1004 (1992), Warr v. United States (Warr), 46 Fed. Cl. 343 (2000), and McNabb v. United States (McNabb), 54 Fed. Cl. 759 (2002). All of these cases appear to the court to support defendant's position that there is no privity of contract between plaintiff and the United States under the Lease. Plaintiff's arguments attempt to diminish the force and deflect the

---

[7]The Federal Circuit noted that in Brodowy v. United States, 482 F.3d 1370 (Fed. Cir. 2007), it determined that the Court of Federal Claims has subject-matter jurisdiction over a case if "plaintiffs have invoked a money-mandating [source] and have made a non-frivolous assertion that they are entitled to relief under the [money-mandating source]." Greenlee County v. United States (Greenlee), 487 F.3d 871, 877 (Fed. Cir. 2007) (quoting Brodowy, 482 F.3d at 1375). In Greenlee, the Federal Circuit found that the source identified by the plaintiff was "'reasonably amenable' to a reading that it is money-mandating" and that the plaintiff was "within the class of plaintiffs that [the source] authorizes to recover money damages if it can 'establish the right to recovery under' [the source]." Greenlee, 487 F.3d at 877. Therefore, the Federal Circuit found that "Greenlee County ha[d] identified a money-mandating source sufficient to confer jurisdiction on the Court of Federal Claims." Id.

applicability of these cases. The court, however, is not persuaded by plaintiff's arguments for the reasons stated below.

The court understands plaintiff to allege in its complaint that the United States is a party to the Lease because "the property at issue is in trust or restricted status" and because the Secretary of the Interior approved the Lease. Compl. 1. Defendant relies on Algoma Lumber to support its argument that the BIA's approval of the Lease between plaintiff and CRIT does not put plaintiff in privity of contract with the United States. Def.'s Mot. 9; see Def.'s Surreply 6. Algoma Lumber involved a logging contract between the Klamath Indians and a timber company. 305 U.S. at 419. Pursuant to statute,[8] the Secretary of Interior approved the contract of sale of timber. Id. According to the terms of the contract, the Superintendent of the Klamath Indian School, on behalf of the Klamath Indians, entered into the contract with the timber company. Id. at 421. Payments for timber were made payable to the Superintendent, who then deposited the payments for the benefit of the Klamath Indians. Id. at 420. The timber company claimed that it had overpaid for the timber and brought suit against the government to recover the alleged overpayments. Id. at 417. The Supreme Court rejected plaintiff's claim that approval by the Secretary created privity of contract between itself and the government because the supervising role of the government in the execution of contracts involving Indians is "consistent with the exercise of its function as protector of the Indians without the assumption by the United States of any obligation to the [other contracting party] . . . ." Id. at 422.

The court finds that Algoma Lumber is applicable here. The parties agree that the Lease was approved by the BIA pursuant to 25 C.F.R. part 131 (1981).[9] Pl.'s Resp. 2;

---

[8]In United States v. Algoma Lumber Co. (Algoma Lumber), 305 U.S. 415, 417 (1939), the sale of timber was governed by section 7 of the Act of Congress of June 25, 1910, 36 Stat. 855, 857. A current version of this statute is located at 25 U.S.C. § 407 (2000).

[9]In its Response, plaintiff asserted that the United States terminated the regulatory framework of 25 C.F.R. § 131.5 in 2001. Pl.'s Resp. 9. However, plaintiff later noted that this regulatory framework was re-imposed as part of the revision of Part 162, "after a two month gap," when it became effective on March 23, 2001. Plaintiff's Supplement to its Response to Defendant's Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (plaintiff's Supplement or Pl.'s Supplement), Feb. 27, 2007, 1. Defendant explains that, in 1982, the BIA renumbered several sections of its regulations, resulting, inter alia, in the renumbering of 25 C.F.R. part 131 as 25 C.F.R. part 162. Def.'s Reply at 3 (citing 47 Fed. Reg. 13,326-27 (Mar. 30, 1982)). Defendant also explains that, in 2001, the BIA announced a rulemaking that "acted to separate out regulations governing agricultural leases into a distinctive subpart . . . ." Def.'s

(continued...)

Def.'s Reply 3. Defendant correctly points out that the language contained in 25 C.F.R. § 131.5, to which plaintiff specifically refers in its arguments, Pl.'s Resp. 2; Pl.'s Sur-Surreply 2, now exists now in nearly identical form,[10] at 25 C.F.R. § 162.604 (2006), Def.'s Reply 4. As the Court held in Algoma Lumber, the United States' approval of a lease involving Indian land is consistent with the long-standing relationship between Indians and the government in which the government acts as a fiduciary with respect to Indian property. Actions in furtherance of that fiduciary relationship do not create privity of contract between a contracting party, such as plaintiff, and the United States in these circumstances. The only argument that plaintiff makes in support of a finding of privity of contract is the statement in its Complaint that the United States is a party to the contract because of its approval of the Lease and because "the property at issue is in trust or restricted status." Compl. 1. Plaintiff does not raise or in any way elaborate on this argument again in its responsive briefing to defendant's motion to dismiss. Pl.'s Resp. passim; Pl.'s Sur-Surreply passim. The court agrees with defendant's argument that the BIA Superintendent's approval of the Lease does not create privity of contract between plaintiff and the United States.

Plaintiff recognizes that, under Algoma Lumber, "actions by the United States on behalf of Indian Tribes do[] not necessarily involve the assumption of contractual obligations by the government in the absence of action indicating such a purpose." Pl.'s Sur-surreply 2, 6 (citing Algoma Lumber, 305 U.S. at 421). Plaintiff contends, however, that "enactment of [the statutory scheme that gave rise to Paragraph 33 of the Lease] after the Algoma Lumber decision constitutes the requisite governmental action to become

---

[9](...continued)
Reply 3 (citing 66 Fed. Reg. 7068 (Jan. 22, 2001)). This rulemaking, which became effective on March 23, 2001, Def.'s Reply 3, did not create a gap, as plaintiff contends, Pl.'s Supplement 1, because, as defendant explains, "the old regulations were in effect until the new ones went into effect," Def.'s Reply 3 n.1; see also Oral Argument Transcript (OA Tr.) 20:16 – 21:11 (Ms. Klein) (explaining that during the sixty days that the regulations were to be put into effect, the old regulations remained in effect). Further, this rulemaking was described as "revisions [that] are meant to further fulfill the Secretary's fiduciary responsibility to federally-recognized tribes and individual Indians." 66 Fed. Reg. 7068, 7068 (Jan. 22, 2001) (referring to revisions to "regulations in the areas of probate, funds held in trust for Indian tribes and individual Indians, leasing/permitting, and grazing"). There is no mention of "termination" of this particular regulatory framework in the summary and description of this rulemaking. Id.

[10]The language contained in 25 C.F.R. § 162.604 is nearly identical to 25 C.F.R. § 131.5 except for the deletion of a definition for "immediate family" in 25 C.F.R. § 131.5(b)(1), a change not relevant to this case. Compare 25 C.F.R. § 131.5(b)(1) with 25 C.F.R. § 162.604(b)(1).

contractually obligated to third parties under appropriate circumstances."[11] Id. at 7; see also OA Tr. 29:2-16 (Ms. Connor) (arguing that "the agency required this dual landlord obligation" after Algoma Lumber was issued). Plaintiff argues that the provision mandated by 25 C.F.R. § 131.5 (1981), the provision included at Paragraph 33 of the Lease and to which plaintiff refers to as the "Dual Landlord Provision," Pl.'s Sur-Surreply 2, requires "that all of [plaintiff's] obligations under the Lease be owed to the United States as well as to the CRIT," Pl.'s Resp 2; Pl's Sur-Surreply 2. Paragraph 33 of the Lease provides in pertinent part: "While the leased premises are in trust or restricted status, all of the Lessee's obligations under this lease, and the obligations of their sureties, are to the United States as well as to the Lessor." Pl.'s Resp. App. A at 20. BIA requires that this language be included in any lease entered into pursuant to its regulations. 25 C.F.R. § 131.5(g)(1) (1981); 25 C.F.R. § 162.604(g)(1) (2006).[12] Plaintiff contends, however, that the Lease[13] evidenced the intent that the United States "assume a contractual obligation in order to receive the benefit of all obligations of [plaintiff] under the [l]ease." Pl.'s Sur-Surreply 7 (citing Navajo Nation v. United States, 46 Fed. Cl. 217,

[11]Plaintiff also argues that the United States indicated its intent to assume contractual obligations when it "terminated this [l]ease in violation of its term, using the Dual Landlord Provision." Pl.'s Surreply at 2.

[12]It appears that the requirement that the language contained in Paragraph 33 be included in leases of Indian land was added to the regulations in 1961 as part of revisions to part 131, the leasing and permitting provision. The purpose of these revisions was to accomplish "the realignment of material to present a more logical sequence" and included "[t]he deletion of material regarded as advisory rather than regulatory in nature; and the addition of certain material which more fully encompasses the authorities found in the statutes." Leasing and Permitting, 26 Fed. Reg. 7828 (Aug. 23, 1961) (to be codified at 25 C.F.R. pt. 131). The final rule was published on November 23, 1961 without comments or further explanation. Leasing and Permitting, 26 Fed. Reg. 10,966 (Nov. 23, 1961) (to be codified at 25 C.F.R. pt. 131). The revised part 131 first appeared in the 1965 Code of Federal Regulations. 25 C.F.R. pt. 131(1965).

[13]In addition to arguing that Paragraph 33 demonstrates that the United States is in privity with plaintiff, plaintiff argues that several of the other provisions in the Lease demonstrate that the United States is a party to the contract or lease. Pl.'s Resp. 6. Specifically, plaintiff argues that these Lease provisions evidence an intent that the United States assume contractual obligations, thereby making it a party to the contract. Id. at 7. The court does not find plaintiff's argument persuasive. The various Lease provisions cited by the plaintiff do not demonstrate that the United States assumed contractual obligations as a separate party to the contract.

235 (2000)).[14]

The most basic response to plaintiff's argument is that, in Algoma Lumber, the United States was named as the lessor and the tribe, the lease beneficiary, does not even appear in the lease as a signatory. It is difficult to understand how the United States' "contractual involvement" which the Court in Algoma Lumber declined to find, would be more likely to be found here, where CRIT is in fact a party to the Lease and the United States is not named as the lessor. See Pl.'s Resp. App. A. In the absence of any action taken by the government, or on its behalf, that indicates assumption of contractual obligations, the court does not presume that the government assumed contractual obligations in the Lease between plaintiff and CRIT. It is evident to the court that Paragraph 33 is nothing more than a regulatory provision that allows the United States to act in its long-standing role as guardian of Indian property according to the statutory command that the BIA shall "have the management of all Indian affairs and of all matters arising out of Indian relations." 25 U.S.C. § 2 (2000). Moreover, the court is not persuaded that this particular statutory scheme constitutes an indication of the government's intent to become contractually obligated to third parties in all leases regarding Indian land. The statutory language required to be included in all leases of Indian property simply does not indicate that the government intends to become contractually obligated as a party to the lease. Rather, the government's involvement is limited. Paragraph 33 applies only "[w]hile the lease premises are in trust or restricted status." This interpretation comports with and enables the performance of the United

[14]Plaintiff cites Navajo Nation v. United States (Navajo Nation), 46 Fed. Cl. 217, 234 (2000), rev'd, 263 F.3d 1325 (Fed. Cir. 2001), rev'd 537 U.S. 488 (2003), remanded to 347 F.3d 1327 (Fed. Cir. 2003), remanded to 68 Fed. Cl. 805 (2005), for the proposition that "[i]n order to demonstrate privity, there must be both an intention by the United States to assume a contractual obligation and consideration." Pl.'s Resp. 4. Plaintiff argues that both intent and consideration are present here. Id. at 4, 8. Plaintiff seems to recognize that Navajo Nation does not provide support for plaintiff's position. Id. at 4 (noting that in Navajo Nation the court found that the general provisions of the Lease merely provided for the government's fulfillment of statutory obligations). However, plaintiff argues that, unlike Navajo Nation, all of plaintiff's duties as tenant "were owed to both CRIT and the United States," id. at 4 (emphasis omitted), and "the Lease authorized the United States to act as Landlord," as evidenced by almost fifty references to the United States throughout the Lease, id. at 5 (emphasis omitted). The court does not find plaintiff's citation to Navajo Nation helpful here. In Navajo Nation, the tribe brought suit against the United States alleging that the Secretary of Interior breached its fiduciary duties in connection with a mineral lease between the Navajo Nation and the Peabody Coal Company. Navajo Nation, 46 Fed. Cl. at 221. In this case, plaintiff is the lessee. The lessee in Navajo Nation, Peabody Coal Company, did not bring the action against the United States. The court simply does not perceive how plaintiff's discussion of Navajo Nation supports its position in this case.

States' fiduciary duties owed to tribes and individual Indians. See Trust Management Reform: Leasing/Permitting, Grazing, Probate, and Funds Held in Trust, 66 Fed. Reg. 7068 (Jan. 22, 2001) (to be codified at 25 C.F.R. pts. 15, 114, 115, 162, 166).

Sangre de Cristo, a decision of the Court of Appeals for the Tenth Circuit that follows the Algoma Lumber decision, provides persuasive support to defendant's argument that plaintiff is not in privity of contract with the United States. Sangre de Cristo involved a lease between the Sangre de Cristo Development Company and the Tesuque Indian Pueblo (Pueblo) that was approved by the government – as was the Lease here – pursuant to 25 U.S.C. § 415(a). 932 F.2d at 893. After the Pueblo requested that the Department of the Interior void the lease, id., the Sangre de Cristo plaintiffs brought suit against the United States arguing, among other things, that the United States was liable under contract and trust theories, id. at 893-94. The Tenth Circuit rejected the Sangre de Cristo plaintiffs' claim and held that a statute requiring federal approval of private agreements does not "render the United States a party to agreements reached between private contracting parties merely because its approval is required before the agreements become effective." Id. at 895.

Sangre de Cristo supports the position that the United States, when acting in accordance with its trust obligations to Indians, is not contractually obligated to third parties who contract with Indians. The courts have long recognized the general trust relationship between the United States and Indian tribes. United States v. Mitchell (Mitchell II), 463 U.S. 206, 225 (1983) (noting "the undisputed existence of a general trust relationship between the United States and the Indian people"); Cherokee Nation v. Georgia, 5 Pet. 1, 16-18 (1831) (characterizing what is now the trust relationship between the United States and Indian people); see also Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F.3d 1339, 1348 (Fed. Cir. 2004), cert. denied, 544 U.S. 973 (2005). The Bureau of Indian Affairs (BIA) is the federal agency "'charged with fulfilling the trust obligations of the United States' to Indians . . . ." Poafbybitty v. Skelly Oil Co., 390 U.S. 365, 374 (1968); see also Nevada v. United States, 463 U.S. 110, 127 (1983); Nell Jessup Newton et al., Cohen's Handbook of Federal Indian Law § 5.03[2] (2005 ed.) (describing the scope and authority of the BIA). The general purpose of the BIA regulations in the area of leasing Indian land, as indicated in recent revisions to the regulations, is to "further fulfill the Secretary's fiduciary responsibility to federally-recognized tribes and individual Indians." Trust Management Reform: Leasing/Permitting, Grazing, Probate and Funds Held in Trust, 66 Fed. Reg. 7068 (Jan. 22, 2001) (to be codified at 25 C.F.R. pts. 15, 114, 115, 162, and 166). There is nothing that the court is aware of that supports the view that the BIA regulatory scheme concerning the leasing of Indian land intended to make the government contractually obligated in leases of Indian land.

Defendant also argues that the holding in Warr is applicable here. See Def.'s Mot. 8, 9. In Warr, a tenant of Indian allottees sued the government for damages resulting from crop losses due to inadequate water supply from the Wapato Irrigation Project (WIP). Warr, 46 Fed. Cl. at 344. The Warr plaintiff and the Yakima Tribal Council entered a five-year lease of allotted land on the Yakima Indian Reservation, which included land designated to receive water from the WIP. Id. The Department of Interior, through the Bureau of Indian Affairs, administers the WIP. Id. The court analyzed whether the Warr plaintiff could maintain its claims against the United States based on the lease agreement, the statutes and regulations governing the WIP, and on the basis of an alleged oral contract with the WIP Administrator. Id. at 347, 350. The court held that it did not have jurisdiction over the Warr plaintiff's claims because there was no privity of contract based upon a lease of allotted land, id. at 348, and because the statutes and regulations related to the WIP are not money-mandating, id. at 349. The court granted summary judgment in favor of the government because the Warr plaintiff failed to demonstrate that it could recover on the basis of an oral contract with the government through the WIP Administrator. Id. at 352. Relevant to this case, the court, in Warr, followed that holdings in Algoma Lumber and Sangre de Cristo and found that the government is not rendered contractually liable to third parties who contract with Indians on the basis of the government's supervisory role in such contracts. Warr, 46 Fed. Cl. at 348-49. The court sees no reason why a different result is required here.

Nevertheless, plaintiff attempts to demonstrate why its case is different from the factual situations in previous cases that address the same issues raised here. Plaintiff argues that its "Lease bestowed much more than the simple signatory or administrative involvement of the United States which previous courts have rejected as not demonstrating the requisite intention by the United States to assume a contractual obligation." Pl.'s Resp. 6-7 (referring to the Algoma Lumber decision and the Sangre de Cristo decision). Plaintiff argues that the facts of its case are more similar to the facts in Warr and that here it has "established an obligation of the United States as to which there was a breach." Pl.'s Sur-Surreply 12. Plaintiff interprets the Warr plaintiff's argument as an argument "that the government had assumed duties of good faith and fair dealing in taking the necessary actions to be able to be able to deliver the irrigation water." Id. at 10. Plaintiff contends that the court in Warr rejected the defendant's argument that the Warr plaintiff failed to establish a contract, id. (quoting Warr, 46 Fed. Cl. at 351), but because the Warr plaintiff had not paid his irrigation assessments, the court "found no jurisdiction because [the Warr] plaintiff had not established an obligation of the United States as to which there could have been a breach and granted the government's motion." Id. (citing Warr, 46 Fed. Cl. at 352). Plaintiff argues that under this reasoning, it is entitled to damages because it was not in default of the lease and the United States breached its obligations of good faith and fair dealing created by the lease. Id. at 11.

Plaintiff's reliance on Warr is misplaced because plaintiff misinterprets the facts and the court's holding in Warr. In Warr, the court's discussion concerning the Warr plaintiff's failure to pay his irrigation assessments was in relation to the Warr plaintiff's failure to demonstrate that it was entitled to relief under the oral contract with the government. Warr, 46 Fed. Cl. at 350-52. The court in Warr found it had subject matter jurisdiction because the Warr plaintiff had satisfactorily demonstrated it was within the class of plaintiffs entitled to rely on the oral contract alleged. Id. at 350 (noting that the Warr plaintiff had sufficiently pleaded the existence of a contract with the government). Regardless of whether Saguaro is or is not in default under its Lease with CRIT, there is nothing here that establishes that the United States is obligated to plaintiff. Plaintiff here, as distinguished from the plaintiff in Warr, has failed to demonstrate that it is in privity of contract with the United States.

Defendant also points to McNabb as support for its argument that plaintiff is not in privity of contract with the United States. Def.'s Reply 4; Def.'s Surreply 7. The plaintiffs in McNabb entered into sharecropping leases with members of the Shoshone Bannock Tribes for farm land on the Fort Hall Indian Reservation. McNabb, 54 Fed. Cl. at 760. Under the terms of the lease, the BIA assumed responsibility for 80 percent of the costs incurred in growing crops and received 80 percent of the gross profits. Id. The McNabb plaintiffs sued the United States on a breach of contract theory, among other theories, to seek redress for denial of crop subsidy payments offered by the Farm Service Agency of the United States Department of Agriculture. Id. at 760-61. The McNabb plaintiffs argued that the BIA had assumed "almost total managerial control over the allotted lands . . . ." Id. at 769. Relying on Algoma Lumber, Sangre de Cristo, and Warr, the court rejected the McNabb plaintiffs' argument that privity of contract was present because exercise of the government's plenary power to safeguard Indian property does not "involve the assumption of contractual obligations by the government." Id. The McNabb plaintiffs pointed to several statutes and regulations that require certain provisions to be included in leases of Indian land. Id. at 771-72. As in this case, the McNabb plaintiffs pointed to language contained in standard BIA leases pursuant to federal regulations regarding the duties a lessee owes to the United States, id. at 772 – the same language contained in Paragraph 33 of the Lease at issue in this case, Pl.'s Resp. Ex. 1. The court rejected the McNabb plaintiffs' argument and held that the regulations cited by the McNabb plaintiffs, including citations parallel to the regulations cited by plaintiff here, "do not authorize the BIA to become a party to Tribal contracts, but only provide for the BIA to be an approval authority and guardian of Native American interests . . . ." McNabb, 54 Fed. Cl. at 773.

The court agrees with defendant that the court's rationale in McNabb is equally applicable here. The court is not persuaded by plaintiff's argument that Paragraph 33

creates privity of contract. In particular, the court does not agree that this provision is a "dual landlord provision" as plaintiff describes. Rather, it appears to be a provision that allows the government to act in its role as trustee of Indian land. The plain language provides that "all of the lessee's obligations . . . are to the United States as well as the owner of the land." 25 C.F.R. § 162.604(g)(1) (emphasis added). The provision fails to provide, however, that the United States owes the obligations of a landlord to the lessee.[15]

In an effort to distinguish its case from McNabb, plaintiff argues that "[w]hether or not the Dual Landlord Clause creates consideration depends upon the facts and circumstances of each case." Pl.'s Sur-Surreply 8. Plaintiff asserts that because the lease in question in McNabb was improperly labeled in order to allow the lessees to obtain crop subsidies, the lessees "had unclean hands and had unquestionably breached their duty of good faith and fair dealing toward the government . . . ." Id. at 9. Plaintiff argues that because the McNabb lessees had "unclean hands," "there could have been no consideration flowing between [the McNabb] plaintiffs and the government to create privity of contract under the Dual Landlord Provision." Id. (emphasis omitted). Saguaro contends that "there is consideration flowing between [itself] and the government to create privity of contract under the Dual Landlord Provision," id. at 9-10, because "there is no evidence that [plaintiff] has unclean hands, nor is there any allegation that it breached its duty of good faith and fair dealing toward the government by any wrongful conduct," id. at 9.

Plaintiff's argument is unavailing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981) (emphasis added). However, a duty of good faith and

---

[15]Plaintiff also argues that in McNabb, the court "found [that] the Dual Landlord Provision did not . . . confer privity of contract" because the McNabb "plaintiffs had filed suit before exhausting their administrative remedies within the BIA and did not have a final agency decision." Pl.'s Sur-Surreply 9 (citing McNabb, 54 Fed. Cl. at 771-772). Plaintiff appears to be arguing that if the McNabb plaintiffs had filed suit after exhausting their administrative remedies the McNabb court could have found that privity of contract between the plaintiffs and the United States. The court disagrees with plaintiff's interpretation of McNabb. Rather, the McNabb court explained that pursuant to 25 C.F.R. § 162.14 (1987), all allegations of lease violations are subject to an agency appeals procedure, McNabb, 54 Fed. Cl. at 771, and that "after agency appeals have been exhausted and a final BIA decision is issued, judicial review is not to this court, but to federal district courts for an APA review," id. at 772. The McNabb court also stated that "[i]f the BIA regulations intended the BIA to be a party to a lease, the Contract Disputes Act would be implicated for lease disputes." Id. The court agrees that the BIA regulations do not intend the United States, acting through the BIA, to be a party to a lease described in the BIA regulations.

fair dealing does not create a contract with a person or entity not a party. There must first be privity of contract between two parties in order for the duties of good faith and fair dealing to flow between the parties. As previously explained, the court does not find that there is privity of contract between plaintiff and the United States.

## IV. Conclusion

Plaintiff has failed to demonstrate that there is privity of contract between itself and the United States. Because plaintiff is not within the class of plaintiffs entitled to recover under the asserted money-mandating source on which it relies, the court does not have subject matter jurisdiction over plaintiff's claim.

For the foregoing reasons, the court GRANTS defendant's motion to dismiss for lack of subject matter jurisdiction. The Clerk of the Court shall ENTER JUDGMENT dismissing the Complaint.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge